Driggs *v.* The Albany Insurance Company.

------•••------

SAME TERM. *Before the same Justices.*

DRIGGS *vs.* THE ALBANY INSURANCE COMPANY.

Where a policy of insurance for $1800 on a grist-mill and $700 on machinery therein, was renewed, in general terms, for the sum of $2500, without making any distribution of the risk; *Held* that it was the intention of the parties that the insurance should thereafter be without any distribution of the risk, and should apply generally to both the building and the machinery.

THIS was an action upon a policy of insurance against loss or damage by fire. The defendants, by policy No. 19,259, dated September 19, 1838, insured Stryker & Foster " $800 *on their interest* ($\frac{1}{2}$) *in a three story frame grist-mill,*" and " $800 *on*

their interest as aforesaid, on the machinery contained therein." By the conditions annexed to the policy, "*insurances once made may be continued on payment of the premiums, and a receipt given for the same.*" By subsequent change in the ownership, and renewal receipts of policy, the insurance under the same policy became for $2500, viz. $1800 on mill and $700 on machinery, for which amount said "*Policy No.* 19,259 *was continued in force.*" In 1847, the agent was changed, and by the renewal receipts from that time, "*Policy No.* 19,259 *was continued in force*" from year to year, but without repeating the memorandum as to the division of the risk between mill and machinery. In February, 1849, the mill and machinery were burned, and the plaintiff made his proof of loss, in which he valued, and claimed for, the *frame of the grist-mill and the foundation,* $1200. The complaint alledged a loss of $3800 of insured property. The answer denied such loss, and averred that the insurance, at the time of the loss, was a divided risk of $1800 on the frame grist-mill, and $700 on the machinery, and further averred that the value of the frame grist-mill at the time of the loss did not exceed $1200. And the defendants denied that the plaintiff had sustained loss and damage of property insured by the policy, to the amount claimed in the complaint ; and that under the insurance upon the mill the plaintiff could not recover any more than $1200.

The judge decided that the insurance, at the time of the fire, was a general insurance, without division of risk; and that this entitled the plaintiff, at all events, to the full amount of the insurance, and rendered the question of the value of the mill immaterial.

The plaintiffs then proved a loss upon the mill buildings and machinery, amounting together to over $3000; about $1950 of which was upon the frame building of the grist-mill, and the foundation thereof.

The judge directed and charged the jury, that the plaintiff was entitled to, and directed them to find, a verdict for the plaintiff, for $2500, and the interest, as proved. To which charge and direction the defendants' counsel excepted, and requested the judge to charge that the plaintiff was not entitled to recover any

more than the amount of the $700 insured on the machinery, and the $1200 the value of the mill building, with the proper interest. The judge refused so to charge, and the defendants' counsel excepted.

The jury found a verdict for the plaintiff for $2703,69; and from the judgment entered thereon the defendants appealed.

*H. A. Foster*, for the plaintiff.

*Geo. F. Comstock*, for the defendants.

*By the Court*, GRIDLEY, P. J. The decision of this cause at the circuit turned mainly on the construction given to the policy on which the suit was brought, as modified by the renewals that had from year to year been made on it. The original policy was executed in 1838, to Messrs. Stryker & Foster of Rome, on an undivided half of the mill in question—distributing the risk as follows: $800 on the frame grist-mill; $800 on the machinery therein; and $300 on a dwelling house on the premises. In 1840 the Messrs. Tibbits became the owners of the entire mill, and on the 25th day of May, of that year, by a renewal receipt, continued the policy for the sum of $2000 for one year, by paying a premium of thirty dollars, and distributing the risk as follows: $1200 on the mill; $500 on the machinery and $300 on grain and flour, and wholly omitting the dwelling house on the premises. In 1841, Jacob Tibbits, who had succeeded to the ownership of the mill, for a premium of forty-five dollars, insured $3000 on the premises, as follows: $1800 on the mill; $700 on the machinery; and $500 on grain and flour. The policy continued to be renewed from year to year, to successive owners, at a premium of thirty-seven dollars and fifty cents, for the sum of $2500, continuing $1800 on the mill and $700 on the machinery, till 1847, when the agent was changed, and the renewal receipts no longer provided for a distribution of the risk: but the insurance was, so far as any light is furnished by the language of the receipts, continued for $2500 on the mill and machinery in the aggregate. The following is a copy of the renewal receipt upon which the action was brought.

Driggs *v.* The Albany Insurance Company.

" Rome, Jan'y 31, 1849.

Received of William Driggs thirty-seven and $\frac{50}{100}$ being the premium on twenty-five hundred dollars insured under policy No. 19,259, which is hereby continued in force for one year from the 31st day of January, 1849, until the 31st day of January, 1850, at noon.

Amount insured $2500.   B. J. Beach, Ag't Alb'y
Premium paid   $37,50.               Insurance Co."

Here the premium is the same, and the amount insured was the same as had been embraced in all the receipts since 1843. All those receipts had *distributed* the risk on the mill and machinery down to 1847, after which all the receipts were in form like the one on which the action is founded and which is above set forth.

Now we think it fair to presume that the policy, which was for $2500, was intended to apply to the machinery as well as the mill, for several reasons. The amount insured was about the same as had been distributed between the mill and machinery for the four years preceding 1847. That amount, therefore, is just as applicable to the machinery as to the mill. Again; the amount insured, $2500, considerably exceeds the highest estimate of the value of the mill alone. The insurance company, then, if this policy were applied to the mill alone, would be violating a well known rule of insurance companies, by which they insure not exceeding two-thirds of the estimated value of the building. It is still more unlikely that the plaintiff would have been willing to pay a premium on a large excess in the value of the mill, and leave his machinery without insurance.

If this receipt is construed to embrace both the mill and the machinery, as I think it obviously must be, it is equally clear that it embraces them in the aggregate. The receipts made no distribution of the risk. The risk had been distributed, up to 1847. Why was the change made? Doubtless for the benefit of the assured. To enable the assured to be fully indemnified in case of a loss, whether more or less of the machinery should be saved. If we undertake to incorporate the provisions of the renewal receipt of 1849 with the original policy, I would ask,

Driggs *v.* The Albany Insurance Company.

how much of the $2500 should be applied to the mill, and how much to the machinery? Shall we be governed by the receipt of 1846, or by some of the previous receipts? Shall it be $800, as by the original policy, or $500 as by the renewal of 1845? The true answer to these questions is that when the parties choose to renew the policy without making any distribution of the risk, they mean the insurance to be without a distribution of the risk, and to apply generally to both the building and the machinery. The court has no power to alter the contract of the parties, as they themselves have seen fit to make it. Nor has the court the power to limit, or enlarge the terms of the renewal receipt, by construction, except upon the controlling reason appearing on the papers, or from the circumstances surrounding the case. No such reason has been shown, and no such circumstances exist.

This construction best comports with the general rule of interpretation applicable to policies of insurance. That rule requires the policy " to be construed largely for the benefit of trade and for the insured." (*Pelly* v. *The Royal Ins. Co.* 1 *Burrow*, 349. 1 *Bos. & Pull.* 316. *See also* 1 *Duer on Ins.* 161, sec. 5; *Id.* 162, sec. 6.) In *Dow* v. *Hope Ins. Co.* (1 *Hall*, 174,) Jones, Ch. J. says, " It is true that a policy is a contract of indemnity, and such construction is to be given to the words employed in it as will make the protection it affords co-extensive, if possible, with the risk of the assured during the voyage for which the premium is paid." Now apply this language to a policy of insurance against fire, and we find that we are to give such a construction as will make the indemnity co-extensive with the risk. This we shall fail to do by adopting the defendants' construction of this contract. For if the building was worth $2500, the insurance being $1800, and was entirely consumed, and the machinery was saved without loss, the assured would only receive $1800, when the loss would be $2500, and a premium received upon the full sum. But by the contract as we hold it should be interpreted, the indemnity will be commensurate with the risk. Again; the renewal receipt was executed by the defendants, and a change made in it which materially altered the construction of the contract in favor of the other party. Now the rule that the

construction must be taken strongly against the insurer who executed the contract should be adopted.

II. In the particular case under consideration the plaintiff was entitled to the whole sum he recovered, on any construction of the contract. The mill was proved to be worth $1950, and the machinery exceeded in value the residue of the verdict. It is true the ruling at the circuit rendered this fact immaterial; but the evidence afterwards showed that the recovery was not too much, upon the defendants' own interpretation of the policy.

