THE ST. NICHOLAS INSURANCE COMPANY, Respondent,
*v.* THE MERCHANTS' MUTUAL FIRE AND MARINE
INSURANCE COMPANY, Appellant.

*Reinsurance — notice of other insurance — "runnning on the Hudson river,"
defined — extra-hazardous articles.*

In an action upon a policy of reinsurance delivered by the defendant to the
plaintiff, of a barge "while running on the Hudson and East rivers," it appeared
that the original policy of the defendant had been, at the expiration of its term,
extended; that after the delivery of the defendant's original policy, and before
its extension, the plaintiff, its first policy having expired, had issued a new
policy, with the same provisions, upon the property insured; that no notice of
the plaintiff's new policy had been indorsed on the defendant's policy, which
provided that it should become void if the insured should thereafter make any
other insurance on the property without giving notice to the defendant. *Held,*

That the agreement contained in the receipt extending the defendant's original
policy created a new contract resting on the facts as then existing, and revived
the defendant's original policy, even if, before such agreement to extend it, it
had become invalid;

That it was not necessary to have notice of the plaintiff's new policy indorsed
upon defendant's policy, as the latter policy provided that any loss incurred
should be borne by it *pro rata* with the plaintiff, which was a sufficient indorse-
ment of the plaintiff's policy;

That the words "while running on the Hudson and East rivers" did not restrict
the insurance to the time that the barge was in motion, but it was intended by
them to describe the business of the barge employed upon those waters, and to
cover the time required for lading and unlading, as well as when the barge
was in actual motion;

That, although baled hay and straw were mentioned in defendant's policy as
extra-hazardous articles, and it was therein provided that defendant should
not be liable under its policy while the barge was used for carrying extra-
hazardous goods without notice, yet that plaintiff might show that it was part
of the ordinary business of barges "running on the waters of the Hudson and
East rivers" to carry such articles, and thus establish defendant's liability
under the general terms of the policy;

That if such proof were given by plaintiff, defendant was entitled to show that
the custom of carrying such articles was invariably subject to the payment of
an extra-hazardous premium.

The underwriter is presumed to understand the business which is made the
subject of the insurance.

Appeal by defendant from a judgment recovered on trial at the
New York Circuit, and from an order denying a motion for a new
trial made upon the minutes of the court.

*Geo. W. Parsons*, for the appellant.   It was conceded on the trial, and cannot be denied, that carrying or storing " hay and straw pressed in bales," or baled hay and straw, is an extra-hazardous business. ( *Wall* v. *The East River Ins. Co.*, 3 Duer, 264 ; 3 Seld., 370 ; *Lee* v. *Howard Fire Ins. Co.*, 3 Gray [Mass.], 583 ; *Jennings* v. *Chenango Mut. Ins. Co.*, 2 Den., 75 ; *Merrick* v. *Provincial Ins. Co.*, 14 Upper Canada [Q. B. Cases], 439 ; *Macomber* v. *Howard Fire Ins.* · *Co.*, 7 Gray, 257 ; *Whitemarsh* v. *Charter Oak Fire Ins. Co.*, 2 Allen [Mass.], 581.)   The evidence in regard to the custom of a class of barges to carry baled hay and straw as freight on the Hudson and East rivers was improperly admitted.   (*Collendar* v. *Dinsmore*, 55 N. Y., 200 ; *Ripley* v. *Ætna Ins Co.*, 30 id., 136 ; *Wall* v. *The East River Ins. Co.*, 3 Duer, and Seld., *supra ; St. Nicholas Ins. Co.* v. *Merc. Mut. Ins. Co.*, 5 Bosw., 23, and numerous cases cited ; *Macomber* v. *Howard Fire Ins. Co.*, 7 Gray, 257 ; *Whitemarsh* v. *Charter Oak Ins. Co.*, 2 Allen, 581 ; *Pindar* v. *The Resolute Ins. Co.*, 47 N. Y., 114.)   At most the custom sought to be proved was local, and the defendant being a foreign corporation, could not be presumed to know it. (*Stebbins* v. *Globe Ins. Co.*, 2 Hall, 632 ; *Bradley* v. *Wheeler*, 44 N. Y., 500 ; *Higgins* v. *Moore*, 34 id., 425 ; *Dawson* v. *Kettle*, 4 Hill, 137 ; *Wheeler* v. *Newbold*, 5 Duer, 29 ; affirmed in 16 N. Y., 392 ; *Barnard* v. *Kellogg*, 10 Wall., 383 ; *Walls* v. *Bailey*, 49 N. Y., 473 ; *Rogers* v. *Mechanics' Ins. Co.*, 1 Story's C. C., 603.)   " The usage in a particular place, or of a particular class of persons, cannot be binding upon other persons, unless the other persons are actually acquainted with the usage, and adopt it." (*Bartlett* v. *Pentland*, 10 Barn. & Cres., 760 ; *Russell* v. *Bangley*, 4 Barn. & A., 395 ; *Gabay* v. *Lloyd*, 3 Barn. & Cres., 793 ; *Lawrence* v. *Aberdein*, 5 Barn. & Ald., 107 ; *Scott* v. *Erving*, 1 id., 605 ; *Hermann* v. *Western Fire Ins. Co.*, 15 La., 517 ; *Ripley* v. *The Ætna Ins. Co.*, 30 N. Y., 136 ; *Sipperly* v. *Stewart*, 50 Barb., 62 ; *Stebbins* v. *Globe Ins. Co.*, 2 Hall, 632 ; *How, Receiver, etc.*, v. *Mutual Safety Ins. Co.*, 1 Sandf. [N. Y.], 137 ; affirmed, 2 Comst., 235 ; 2 Pars. on Con., 53 ; *Harper* v. *Albany Mut. Ins. Co.*, 17 N. Y., 194 ; 22 id., 441.)

*Erastus Cooke*, for the respondent.   These articles, known as extra hazardous, being included in the general business of a freight

boat on the Hudson river, are just as clearly embraced in the policy as if each article was enumerated. (Opin. of PRATT, J., in *Harper* v. *The Albany Ins. Co.*, 17 N. Y., 197; *Same* v. *N. Y. City Ins. Co.*, 22 id., 442; *Steinback* v. *Lafayette Fire Ins. Co.*, 54 id., 90; *The Mayor*, etc., v. *The Hamilton Fire Ins. Co.*, 10 Bosw., 537.) Having knowledge of the actual use of the boat, even if the articles were absolutely prohibited in the policy, the insurer is liable. (*Peoria Marine Fire Ins. Co.* v. *Hall*, 12 Mich., 202.) In a policy of reinsurance the subject of the contract is not the property originally insured, but the risk incurred by the former underwriter and his interest in the preservation of that property. (*The Mut. Safety Ins. Co.* v. *How*, 2 N. Y., 235; *Burritt* v. *The Saratoga Co.*, 5 Hill, 192; *People* v. *Liverpool, London and Globe Ins. Co.*, 2 N. Y. Sup. Ct., 268) In *Ludwig* v. *The Jersey City Insurance Company* (48 N. Y., 379) the insurance was upon goods on the first floor. At the time of the renewal of the policy they had been removed to the upper floor, of which no mention was made on the policy. The insurers were held liable. (*Stebbins* v. *Globe Ins. Co.*, 2 Hall, 632.)

DANIELS, J. :

This action was brought, and the recovery in it was had, upon a policy of reinsurance executed and delivered by the defendant to the plaintiff. The plaintiff in the first instance issued a policy of insurance upon the barge Berkshire, her tackle, etc., while used as a freight-boat on the Hudson river, bay and harbor of New York, or while lying up or stopping at any of the ports or places in such waters.

This policy was in the sum of $4,000, extending from the 16th of March, 1864, until the 16th of March, 1865. And on the 1st of March, 1865, the defendant issued its policy of reinsurance by which it insured the plaintiff, in the sum of $2,000, against loss by fire on the barge Berkshire, running on the Hudson and East rivers, from the 28th day of February, 1865, until the first day of the next September; and the loss, if any, was declared to be payable *pro rata* with the reinsured. This policy was afterwards extended until the 16th day of March, 1866, and on the 27th day of November, 1865, the barge was destroyed by fire while laden with a cargo, and lying at Van Wie's dock, a few miles below Albany, on the Hudson river. The defendant resisted its liability under its

policy for several reasons. One of these was, that the plaintiff, on the 7th of March, 1865, issued a new policy on the barge, by which it was, in the same terms as were used in the original policy, insured against loss by fire from the 16th day of March, 1865, until the 16th day of March, 1866, in the amount of $5,000, and as notice of that was not given to the defendant, and it was not indorsed upon its policy, it was claimed that it had ceased to be liable when the barge was destroyed.

The clause contained in the defendant's policy upon this subject was the usual one by which it was declared that if the assured or its assigns should thereafter " make any other insurance on the same property, and shall not, with all reasonable diligence, give notice thereof to this corporation, and have the same indorsed on this instrument, or otherwise acknowledged by them in writing, this policy shall cease and be of no further effect." It is not necessary to determine whether this clause would be violated by a further insurance made upon the same property by the party reinsured, for the reason that the defendant's policy, by its own terms, expired before the loss was caused by the destruction of the property, and before the happening of that event, and after the increase was made in the insurance issued by the plaintiff, from $4,000 to $5,000, the defendant extended its insurance until the time designated for the expiration of the last policy issued to insure the property by the plaintiff.

That was done by a receipt, acknowledging the payment of a further premium for that purpose, and containing an agreement that its preceding policy was thereby continued in force from the 1st of September, 1865, until the 16th of March, 1866, and that had the effect of reviving the insurance from the time it was given, even though it had previously become inoperative by reason of the plaintiff's failure to give notice of the increase in the amount of its own insurance, and its omission to have it indorsed upon the defendant's policy, or to be otherwise acknowledged by it in writing; for the agreement contained in the receipt created a new contract between the parties by which the plaintiff was reinsured, according to the terms of the policy nominally as well as actually expiring at that time, for the further period mentioned in the receipt.

It took effect at the time when the latter instrument was made

and delivered, and from that time applied the preceding policy to the additional insurance made by the plaintiff. It was a new contract of reinsurance, creating a liability on the facts then existing; and it revived the defendant's policy, even if, before that, it had become invalid for want of conformity to the clause already mentioned; that was the natural result of what then transpired, and it has the sanction of several authorities existing upon this subject, in which it has been held that the renewal of the preceding policy creates a new contract of insurance. (*Noyes* v. *Hartford Fire Ins. Co.*, 54 N. Y., 668; *Peoria Marine and Fire Ins. Co.* v. *Hervey*, 34 Ill., 46, 64; *Hartford Fire Ins. Co.* v. *Walsh*, 54 id., 164, 167; *Brady* v. *Northwestern Ins. Co.*, 11 Mich., 425–444; *Luciani* v. *Am. Ins. Co.*, 2 Walton, 167; *Driggs* v. *Albany Ins. Co.*, 10 Barb., 440; *Carroll* v. *Charter Oak Ins. Co.*, 38 id., 402.) And as the risk newly taken by the defendant was in no respects changed, the policy contained nothing rendering the receipt inoperative or ineffectual as an extension of the insurance. Neither was the defendant's policy avoided by any omission to comply with the clause requiring that notice of previous insurance should be given to it, and such insurance indorsed upon the policy issued by it, for the clause inserted in the defendant's policy declaring that any loss incurred should be borne by it *pro rata* with the plaintiff, was apparently designed to dispense with any further notice of the insurance previously made by the plaintiff upon the property mentioned. It imported the existence of an understanding that the plaintiff had already insured the property, and that the defendant's insurance was designed as an indemnity, to the extent of the sum mentioned in it, against the loss which the plaintiff might be required to bear by means of its own insurance. That was a sufficient indorsement of the insurance made by the plaintiff when the defendant's policy was issued, and it was renewed when the receipt continuing the insurance was given on the first day of the following September. This clause, as a portion of the said agreement, was rendered applicable to the insurance then created, as well as the others contained in the same policy. Altogether, they effected a new insurance to the plaintiff in this action, as it had then itself become bound by its second policy.

The plaintiff's policies were both much more explicit in their

description of the business of the barge than the one issued by the defendant. They insured her while used as a freight-boat, and while lying up or stopping at any of the ports or places on the waters of the Hudson river, bay and harbor of New York; but while they were more minute, they were really no more extensive in their signification than the terms made use of by the defendant. By its policy, it insured the barge while "running on the Hudson and East rivers." The term "running" was evidently here employed in the sense ordinarily given to it, as it is applied to the business of navigation, and for that reason it could not have been intended that it should be restricted to risks encountered only when the barge was in motion, but it was equally within the protection intended to be afforded by the policy while it was lying at the wharves it was obliged to resort to for the purpose of receiving and discharging its cargo. The term "running," as it was used by the defendant, must have been designed to include all that ordinarily would be comprehended by the business of a vessel in active employment. It described the condition of a vessel commercially engaged; and it was used by way of contrasting the difference between vessels laid up and out of use and those making trips upon the water. It must have been so understood by the parties in this instance, for nothing less than that could have been consistent with the indemnity designed to be secured by the defendant's policy. It was known by the defendant that the plaintiff had insured this barge in the use which would be expected to be made of it upon the waters of the river, and of the harbor of New York. And to share its liability, the policy was made by and taken from the defendant. Both parties understood that to be the design entertained, and the language selected was assumed to be adequate for that purpose. That was its popular meaning, and the fair intention of the parties cannot be maintained by placing any other construction upon it. By "running" upon the waters of the Hudson and East rivers the business of the barge employed upon those waters must have been intended to be described; and that included the time required for lading and unlading, as well as that when the barge was actually in motion. She was all the while employed upon these waters, and that was running upon them within the meaning of that term in its application to commercial pursuits.

When the barge was burnt she was laden with a cargo, which in part consisted of baled hay and straw, which were mentioned by the policy of the defendant as extra-hazardous articles. And it was in substance provided that the defendant should not be liable, under its policy, for any loss occurring while the barge was used for the purpose of carrying on or exercising therein any trade, business or vocation, or storing therein any of the articles, goods or merchandise denominated extra hazardous, unless otherwise specifically provided for or agreed to in writing added to or indorsed upon the policy. But by insuring her as a barge running on the waters of the Hudson and East rivers, it was contended by the plaintiff, that this clause had been so far complied with as to render the defendant liable. It was maintained that it was part of the ordinary business of barges employed upon those waters, to carry baled hay and straw ; and if that were true, then the insurance made allowed the barge to carry those articles. It included all that such barges were usually employed to do. And if carrying baled hay and straw was part of that employment, then it was in writing added to and indorsed upon the policy, and the defendant was liable for a loss arising from it.

The plaintiff's policy, in express terms and for an additional premium, allowed the barge to carry baled hay and straw. But if it was really a portion of the business, in the transaction of which it was insured, this was simply a needless precaution, making no change in the obligations of the insurer. It did not preclude the plaintiff from still claiming that the defendant had become liable to the same extent, by means of the general terms used in its policy to describe the business of the barge. In that respect the case resembled very nearly that of *Steinbach* v. *Lafayette Fire Insurance Company* (54 N. Y., 90), where the special enumeration of one extra-hazardous article did not preclude the plaintiff from his right to insist upon the benefit of the general terms, otherwise used for the purpose of including different articles deemed to be equally hazardous. It was simply a circumstance opposed to the position taken concerning the ordinary business of a barge, and in that respect it would not fail to be attended with its appropriate effect. But the plaintiff had the right, if it could succeed in doing so, still to show that the common business of barges upon these rivers included the carriage of baled hay and straw as portions of their cargoes ; and if that could be established, then the

insured would seem to be entitled to maintain the action brought by it upon the policy. For the underwriter is presumed to understand the business which may be made the subject of the insurance, and for that reason, to intend to protect what may properly appear to constitute a portion of it, as it is usually carried on. (*Harper* v. *Albany Ins. Co.*, 17 N. Y., 197; *Bryant* v. *Poughkeepsie Ins. Co.*, id., 200; *Pindar* v. *Kings Co. Ins. Co.*, 36 N. Y., 648; *Hall* v. *Ins. Co. of North Am.*, 85 id., 292.)

For the purpose of showing that the present case was within the principle sustained by these authorities, several witnesses were examined who testified that barges on the Hudson river commonly carried baled hay and straw, and as the case was ultimately made to depend upon the proof of that fact, it must have been found to have been established, for the jury could in no other way have rendered the verdict which they did for the plaintiff. The fact itself was controverted by the defendant, where no additional premium was paid for the privilege of carrying articles of this description. And it accordingly offered to show that the custom, as it was called upon the trial, was invariably subjected to the payment of an extra-hazardous premium. This was rejected on the objection of the plaintiff, and the defendant excepted to its exclusion. The contract existing in this case was made between the insurance companies, each of which must have understood the business to which it appertained. And if the privilege of carrying baled hay and straw upon barges was subject to this restriction, the evidence offered to prove it ought to have been received. The substance of the offer was that no such privilege existed unless a special premium were paid for its enjoyment; and that had some tendency to establish the fact that these articles were not understood to be ordinary portions of the cargo of a barge. If that were the fact, then insurance, made upon such a vessel running upon these rivers, would only include baled hay and straw, when specially provided for as extra-hazardous commodities. The evidence given on the plaintiff's behalf directly tended to establish the fact that they were included in the terms used as descriptive of the business itself; while that offered by the other party, if it had been received, would have indicated that they were entitled to no such comprehensive signification. It would have added a material qualifi-

cation and restraint to that given on the part of the plaintiff, and might possibly have led to a different result in the action.

It was also objected that the privilege given to burn kerosene for lights avoided the insurance made by the defendant. But as that article was not used on the barge, the simple liberty to use it could not be attended with the effect of annulling the policy in controversy.

It was error to reject the evidence which was excluded, relating to the business of barges on the rivers, and for that reason the judgment and order should be reversed, and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment and order reversed, new trial ordered, costs to abide event.