Jones, C. J.,
after stating the facts of the case.
The question in this case is, whether the policy attached upon the goods for the return voyage or not: and the solution of that question turns upon the construction to be given to the term “ proceeds.” The grammatical sense of the term is the substituted cargo, or property, whatever it may be, which results from, or is acquired by means, of the specified goods. It imports a sale, barter, or other disposition of the outward cargo, or some operation therewith, by which, or by the future investment of the moneys or funds derived therefrom, other goods or insurable property are obtained, on which the policy is to attach for the return voyage. It does not necessarily follow, that the operation is to be effected by a sale or absolute disposition of the goods: the term, *172 by a just and liberal construction, will fairly embrace any insurable interest, which the outward cargo, by any arrangement, enables the assured to procure for the return voyage. On that principle the Supreme Judicial Court of the state of Massachusetts, in the case of Havens v. Gray, [12 Mass. 71.] where the insurance was upon a specified cargo outwards, and the proceeds of that cargo homewards, held, that a return cargo procured by money and credit advanced upon the outward cargo by a factor, with whom the goods were left for sale on the owner’s account, was covered by the policy. The court in that case repelled the narrow construction of the term contended for there by the defendant’s counsel, and held, that the intention of the parties was to insure the returns of the outward cargo for the homeward voyage, and whether the return cargo was procured by the sale or exchange of the outward cargo, or by a credit raised upon the deposit of it, could make no difference to the insurers. Indeed, in a liberal sense of the term, the goods purchased by an advance or loan, on the deposit of the outward cargo, are truly the proceeds of such outward cargo ; for without that cargo, those goods could not probably have been procured.
The same principles governed the case of Whitney v. The American Insurance Company, in the Supreme Court of this state. (3 Cowen, 210.) There the insurance was on wine from Madeira to Calcutta, and on proceeds back; and a return cargo was purchased with money raised by a deposit of the wines. The court held, that the returns were the proceeds of the outward cargo, because the money could not be otherwise raised than by the deposit. And on the same principle, goods purchased by a loan effected on the security of the outward cargo, would be the proceeds or returns of the outward cargo, within the meaning of the contract, and the policy would attach upon them. These cases, and others, arose upon valued policies. The outward cargo had come to a dull market; no sale could be made, except at a ruinous sacrifice; and the advances of the consignees with whom they were deposited for sale, though to nearly the market value, were not sufficient to purchase a return cargo of equal value with the outward loading. And the complaint of the insurers was, *173 that the assured was allowed to apply the valuation to a reduced cargo, which was intended to be applicable to one of equal value with that which was sent out. Hence the struggle they made was, to confine the meaning of the term employed in the contract to the proceeds of the sale, or the absolute disposal of the outward loading. But the courts in both cases held them hound by the terms of the contract to the valuation on the return cargo, as well as the outward, however inferior in value the returns might be ; requiring only of the assured, that the whole market value of the outward cargo at the port of destination should, as nearly as practicable, be invested in such returns. In framing the contract now under consideration, the parties manifestly had the policies in these cases, or one of them, in their eye; and this policy has taken them for its model. But to guard against the consequence of the valuation in the form used in those cases, the insurers have provided in their policy, that the valuation shall be restricted to the outward cargo, and that the insurance shall he upon the actual interest on board'on the homeward voyage. This was a prudent precaution, and an improvement on the former policies. In all other respects the clause is the same in substance with those which were the subjects of the adjudication in the cases of Havens v. Gray, and Whitney v. The American Insurance Company. It follows that the rules of construction applied to those policies are applicable to this. And it is contended, that the liberal principles advanced in those cases entitle the plaintiff" to recover in this case. I cannot deduce from either of those decisions any rule broad enough to embrace the case of an outward cargo brought back as it was originally shipped, Avithout having been changed or examined at the port of destination. The court, in the case of Havens v. Gray, in the course of their opinion, do say it is true, that the intention of the parties, by the clause in question, was to have insurance upon property on board out and home, and that the premium was taken with that -vícav. But the whole contract demonstrates the meaning of that part of then* opinion to be, that the property to which the court referred as the return cargo, was to be the produce of the outward loading, or goods purchased Avith advances or loans upon it. There is no *174 intimation, in any part of the opinion, which encourages the extended construction now contended for, or gives the least countenance to the idea, that the identical goods themselves, composing the outward cargo in the precise state of the original ship- * ment, can in any possible sense of the term be the proceeds of those goods. On the contrary, the court appear to me very clearly to discountenance, if not wholly exclude, such an exposition; for they say that the memorandum means nothing more, in their apprehension, than that the underwriters took the risk homeward of any property, which might be substituted for that which was carried out. Can the sense which that court attached to the term be misunderstood 1 It was a substitute for the cargo earned out, and not the outward cargo itself, which was to compose the homeward cargo; and to my apprehension, such is the clear and obvious meaning of the policy. The parties both contemplated a change of cargo at the port of destination, and the manifest intention was, that the policy for the voyage home should attach on a new or substituted cargo, and not upon that, which was carried out. The term they have used, is the most appropriate, perhaps, that the language furnishes to express that sense and to define it with accuracy and precision. It so necessarily implies that the returns, to use an apt legal phrase, should be issues of the specified articles that no other meaning can be attached to it. As well might the talent, which the unfaithful servant hid in the earth, and kept unemployed until his master’s return, be called the proceeds or produce of that talent, as the identical goods carried out in the primitive state be termed the proceeds of those goods: they are obviously not the proceeds or the produce of the thing, but the thing itself. It is true, that a policy is a contract of indemnity, and such construction is to be given to the words employed in it, as will make the protection it affords co-extensive if possible, with the risks of the assured, during the voyage for which the premium is paid. And we are in interpreting the policy, but to adhere to the strict grammatical sense of the terms of it, and to coniine the construction to their literal meaning. Terms are often employed by the contracting parties to express their meaning, which, on a strict and narrow ex *175 position of them, would defeat the intention of the parties, and disappoint the object of their contract. And I agree with the assured, that the rule of construction which should restrict him to the proceeds of the outward cargo, in the strictest sense of the tenn, would be too rigorous. If in any enlarged or general sense of the clause in question, the same goods, which composed the outward cargo, could, without undergoing any alteration, be understood to be the proceeds of those goods, the court might feel bound to give the contract that construction. But a just regard must be had to the language, which the parties employ, and no strained or unnatural sense must be ascribed to it, unless from necessity, to the prejudice of the rights of either party. And more especially is attention to be paid to the written clauses, which are introduced into the policy for special purposes. If these rules are observed, and any meaning is given to the words employed in the clause in question, how can this policy be made to attach on the outward cargo for the homeward voyage 1 Whether the landing and examination of the goods at the outward port, and the re-shipment of them there would have given the assured any stronger claim, or what change in the outward cargo would have brought it within a liberal construction of the terms of the policy applicable to the homeward cargo, are questions, which if, in any circumstances material, are unimportant in the present case. For it is admitted, that these goods were not examined, if landed, and underwent no change at their port of destination. If the insurance had been upon all goods on board the vessel on her outward and homeward voyages the same goods might have been covered all around.
And if this policy covers these goods on the homewaiti voyage, it is tantamount to an insurance on goods generally for the whole voyage, from the port of loading to the port of destination, and thence back to the port of departure. But that would be an unusual contract of insurance, and would expose the insurers to an increased risk, for which intelligent and discreet underwriters would require a much higher rate of premium. The objection to such a policy in that form would be the increased risk of damage to the goods from their continuing on board the ship for the *176 double voyage. The condition of the cargo on its arrival at the port of destination, if bulk is not broken, cannot be known, and if the goods should be then in the incipient stage of decay, from sea damage on the outward voyage, or in a course of deterioration from time, or other causes, they might perish, or be greatly impaired in value by their continuance on board the vessel unchanged and without examination for another voyage ; when, if landed at the outward port, the damage would be light, and fresh goods, for a return cargo, would be subject to no injury, except from the perils of a homeward voyage. Hence it is, that insurers so greatly prefer to insure, and so generally use the form of insuring, at and from each port, both outward and homeward; thus securing to themselves a change of cargo, or, at least, the unlading necessary for reloading of the old cargo at the intermediate port. By the clause in question in this policy, and by using the term “ proceeds,” if a just exposition is given of it, they secure the same benefit; a change of cargo at the outward port, and guard themselves against the accumulated risks of secret damage and decay so incident to the long continuance of the same cargo on shipboard. These were the most cogent reasons, therefore, for the insertion of this term in the contract by the insurers and they are entitled to the full benefit of the protection it affords them, by making a change of cargo indispensable. The assured has no right to complain. A change of cargo must have been his intention, and the return of the same cargo could not have been contemplated. No liberality of construction can entitle him to such an extension of the contract; and he cannot, in my judgment, prevail in his action.
Oakley, J.,
stated the facts of the case, and proceeded as follows.
The point now submitted to the court, is, whether the goods in question were protected by the policy during the voyage from Batavia to New-York. I am of opinion that they were not.
In Havens v. Gray, [12 Mass. 71.] there was a valued policy of Insurance on cotton, from Portsmouth (New-Hampshire,) to a port" in Europe; the risk so attached to the proceeds of the articles *177 insured, in the return cargo. The outward cargo was not sold, on its arrival at the port of destination, but was consigned to merchants at St. Petersburgh, for sale; who, in consideration of the consignment, advanced to the plaintiffs a réturn cargo, which was laden on board the ship, for the account and risk of the plaintiffs. The ship and cargo were lost on the return voyage to the United States, before any part of the outward cargo was actually sold.
The question was, whether the return cargo could he considered as the proceeds of the outward cargo, within the terms of the policy. The court held, that it ought to be so considered. C. J, Parker, says, “In a liberal sense the return cargo was the pro- “ ceeds of the outward cargo : for without the latter, the former “ would not probably have been procured. The consignment to “ the house at St. Petersburgh must be viewed as a deposit of the cargo with liberty to sell and reimburse themselves for the money advanced on the credit of the deposit.” And he held the meaning of the clause in the policy to be, that the underwriter took the risk home, of any property which might he substituted for that which was '<carried out. In Whitney v. The American Insurance Company, [3 Cow. 210.] there was an insurance on a quantity of wine out, and returns home. At the port of destination the wine was deposited for sale, and an advance made on such deposit with which the return cargo was procured. The court held, that this was equivalent to an actual sale' of the wine, and a purchase of the homeward cargo, with the money arising from the sale; and that the policy therefore covered the homeward, as the returns of the outward cargo.
These cases establish the doctrine that where the insurance is on the proceeds or returns of an outward cargo, the words must receive a liberal construction : and that it is not necessary that the return cargo should be procured by an actual sale of the out» ward cargo, and an appropriation of the money arising from-such sale. It is sufficient that the homeward cargo should be a substitute for the outward, and should spring, though indirectly, from the disposal of the latter, either by sale or -deposit; or that it should be procured on the credit, or in consequence of the duró *178 ward cargo. But while these cases look to a liberal construction of these words in the policy, they do not lose sight of the necessity of adhering to the evident intent jbf the parties, and do not mean to intimate that any violence is to be done-to the plain letter ^ ^ contract. . They adhere to the spirit and terms of that contract, when they recognise the principle, that there must be an actual change of the outward cargo, and the substitution of a new cargo for it. 1
It has been attempted by the plaintiff’s counsel, to bring, the policy now under consideration within the principle of these eases ; but it is quite clear, that they have no application. Here there was no change of the outward cargo, nor was there any disposition made of it, which'can be considered equivalent to a Sale without the most forced construction. There was, it is true, a new bill of lading by the consignee.at Batavia, to the consign- or at New-York. But this was only intended to. revest the property in the consignor, which otherwise would appear to be in. the consignee, by virtue of the original bill of lading.
It is also clear, that there was no change of risk, as to the subject insured: but there was an extension of it beyond the time contemplated by the terms of the policy. It cannot be doubted, that the parties intended that the risk 911 the specific goods insured outward, should cease with the termination of the outward voyage '. and according to that expectation the rate of premium, and the amount insured, was regulated. The policy was a valued one, on the outward voyage ; but as tire amount of the proceeds, when invested in a return cargo, could not he known, it was necessarily left open on the homeward voyage. And it is quite manifest,, that a premium which might have been adequate to cover the risk on the specific goods (which may have been, and probably were, ¿of a- perishable nature) to Batavia, might be altogether inadequate,, if the risk were to be extended to their return to New-York.
It would seem, therefore, to be clear, looking solely to the spirit of the contract between the parties, that they intended that there should be an actual change of the goods insured, at thc-terminairon of the outward voyage ; and that neither party contempla *179 ed the event of the same goods being returned to New-York. Indeed, the provision that the goods outward were valued, and the proceeds home left open, seems to be conclusive as to the intent and expectations of the parties in this respect.
If the construction contended for by the plaintiff’s counsel appears to be thus inconsistent with the spirit of the policy, it is certainly no less at war with its letter. If any meaning is attached to the word “proceeds,” it must certainly be something different and distinct from the goods themselves. And we are not at liberty to reject the word as surplusage, and consider the policy as a simple insurance on the goods out and home.
As, therefore, the risk assumed by the defendants on these goods terminated at Batavia, and as there is no evidence in the case to show that the injury was sustained during the continuance of the risk, there must be a new trial; or if the plaintiff elects, there may be judgment of non-suit entered.

The plaintiff elected to submit to a non-suit, and a judgment of non-suit was accordingly entered.

[A. G. Rogers, Att'y for the plff. I. A. Johnson, Att'yy for the defts.]
Note.—The plaintiff afterwards brought a new action upon the same policy, in the Supreme Court. Upon the trial of the cause before the Judge of the first Circuit, the plaintiff was again non-suited, and the Supreme Court afterwards refused to set the non-suit aside. It is understood that the cause hats been carried t'o the Court of Errors, where it is now pending.