# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## MILLER *et al. v.* INSURANCE COMPANY.

### Decided December 12, 1877.

1877.
Special Term.

1. A new trial, asked on the ground that the verdict is contrary to the evidence, ought to be granted only in a case of plain deviation from right and justice, not in a doubtful case, merely because the court, if on the jury, would have given a different verdict.

2. Where a case has been fairly submitted to a jury, and a verdict fairly rendered, it ought not to be interfered with by the court, unless manifest wrong and injustice has been done, or unless the verdict is plainly not warranted by the evidence or facts proved.

3. Where some evidence has been given, which tends to prove the fact in issue, or the evidence consists of circumstances and presumptions, a new trial will not be granted, merely because if the court, if upon the jury, would have given a different verdict. To warrant a new trial in such cases, the evidence should be plainly insufficient to warrant the finding of the jury. And this restriction applies *a fortiori* to an Appellate Court.

4. The court below may grant a new trial where the evidence is contradictory, and the verdict is against the weight of evidence; but in such case the power of the court to grant a new trial should be very cautiously exercised. And when in such case the court below grants a new trial, the opinion of the court below is entitled to peculiar respect; and generally the Appellate Court will not reverse the order of the court in such case granting a new trial.

5. When the court below grants a new trial, where there is apparently no conflicting evidence, and the opinion and order of the court granting such new trial is excepted to, and the bill

of exceptions does not contain all the facts proved at the trial of the cause, but a part of the facts proved and part of the evidence given, or all the evidence given, then in such case an Appellate Court will not reverse the order of the court granting the new trial, unless it manifestly and clearly appears that the order of court granting the new trial is erroneous.

6. Generally a stronger case should be made to justify an Appellate Court in the disturbance of an order granting a new trial, than when one has been refused.

7. Where a policy of insurance is issued by an insurance company upon a steamboat for a year, with permission to navigate the Mississippi and tributaries, and on the trial of a cause to recover the value of the steamboat, it is proven that the steamboat was lost in Cypress bayou, and that Cypress bayou was navigable by steamboats, and that said bayou emptied into Red river, and that Red river emptied into the Mississippi. HELD:

   That said Cypress bayou was a tributary of the Mississippi, within the meaning of said policy.

8. In the interpretation of a policy of insurance in all cases it must be liberally construed in favor of the insured, so as not to defeat without a necessity his claim to the indemnity, which in making the insurance it was his object to secure. And when the words are, without evidence, susceptible of two interpretations, that, which will sustain his claim and cover the loss, must in preference be adopted.

9. In construing an instrument, prepared by the insurer, it ought to be read most strongly against the maker.

*Supersedeas* granted upon the petition of Isaac Miller, to a judgment and order of the circuit court of Ohio county, made on the 31st day of January 1876, setting aside a verdict rendered, and granting a new trial in a certain action of *assumpsit* then pending in said court, in which the said Isaac Miller, who sued for himself and for the use of Luther E. Magee, David McConnell and L. V. Applegate, owners of the steamboat " Wash. Sawtell," was plaintiff, and the Citizens' Fire, Marine and Life Insurance Company of Wheeling was defendant.

The Hon. Thayer Melvin, judge of the first judicial circuit, presided below.

The case is sufficiently stated in the opinion of the Court.

*Caldwell & Caldwell,* for appellants:

The boat was insured by the policy on the Mississippi river and its tributaries. It was sunk on Cypress bayou, a navigable stream flowing into Red river, and Red river into the Mississippi. The court below held that Cypress bayou is not tributary to the Mississippi, and therefore granted the appellee a new trial. A more liberal construction should have been given to the language of the policy. May on Insurance, §§174 and 175; *Weston Ins. Co.* v. *Cropper,* 32 Pa. 355; *Chandler* v. *St. Paul Ins. Co.,* 21 Minn. 85; S. C. 18 Am. R. 385; *Kentucky Mutual Ins. Co.* v. *Jenks,* 5 Ind. 103 and 104.

*Daniel Lamb* and *William P. Hubbard,* for appellee:

I. The conversation of the defendant's secretary after the expiration of the thirty days, within which the proofs were required to be furnished, cannot constitute a waiver of that requirement. *Underwood* v. *Farmers Ins. Co.,* 57 N. Y. 500, 505-6; *Beaty* v. *Lycoming Ins. Co.* 66 Pa.; 9 S. C. 5 Am. R. 322; *Muhleman* v. *National Ins. Co.,* 6 W. Va. 518; *Leslie* v. *Knickerbocker Ins. Co.* 63 N. Y. 27.

II. The language in question here being not that of a condition, but of the written part of the policy, which was furnished by the insured, ought to be construed not strictly against the insurer, but fairly. *Merchants Ins. Co.* v. *Edmond Davenport & Co.,* 17 Gratt. 145; *Savage* v. *Howard Ins. Co.,* 52 N. Y. 504; *Ripley* v. *Ætna Ins. Co.,* 30 N Y. 158; *Carpenter* v. *Providence Ins. Co.,* 16 Peters 510, 511; *Stokes* v. *Cox,* 1 H. and N. 341, per Pollock, C. B.

III. The court below having granted a new trial, a very clear case of error must be shown by the record to

justify an Appellate Court in setting the order aside. *Shrewsbury* v. *Miller*, 10 W. Va. 115; *Powell* v. *Grimes*, 8 Ind. 252; *Cronk* v. *Cole*, 10 Ind. 408; *Beatty* v. *Hatcher*, 13 Ohio St., 121-2.

VI. A much stronger case is necessary to justify the Appellate Court in reversing an order of the court below *granting*, than one *refusing* a new trial. *Field* v. *Kinnear*, 5 Kan. 232; *Roberts* v. *Jones*, 30 Iowa 525; *Tezeler* v. *Jones*, 33 Iowa 234; *N. Y. Piano Co.* v. *Mueller*, 38 Iowa 552; *Nagle* v. *Hornberger*, 6 Ind. 69; *Leppar* v. *Enderton*, 9 Ind. 353; *House* v. *Wright*, 22 Ind. 383; *Oliver* v. *Pace*, 6 Ga. 185; *Spafford* v. *Bradley*, 20 Ohio 74; *Beatty* v. *Hatcher*, 13 Ohio St. 121; *Hammond* v. *Hammond*, 21 Ohio St. 620.


HAYMOND, JUDGE, delivered the opinion of the Court:

This is an action of trespass on the case in *assumpsit* brought by Isaac Miller, who sues for himself and for the use of Luther E. Magee, David McConnell and L. V. Applegate, late owners of the steamboat called the "Wash Sawtell," against the defendant, and is founded upon a policy of insurance made by the defendant to the plaintiff, on account of the then owners of the said steamboat, in the sum of $2.000.00 upon said steamboat, from the 24th day of October 1871 at noon, to noon of the 24th day of October 1872, when the policy should expire, "unless sooner terminated or made void by conditions hereinafter expressed, with permission to navigate the Mississippi and tributaries, except the Missouri and Arkansas rivers." The action was commenced on the 28th day of May 1872, in the circuit court of the county of Ohio. At a circuit court of said county, held on the 2d day of November 1872, the parties appeared in court, by their attorneys, and on motion of the defendant the judgment entered against it in the office was set aside; and the defendant pleaded,

that it did not assume upon itself in manner and form as the plaintiff in his declaration against it had alleged, and of this it put itself upon the country ; and the plaintiff did likewise. The defendant failed to demur to the plaintiff's declaration, or make any objections thereto for insufficiency. No exception or objection is made or taken before this Court to the declaration for any cause. The declaration seems to state and allege a legal cause of action by the plaintiff for himself and for the use of the other owners of the said steamboat against the defendant. On the 2d day of November 1875 a jury was duly elected, tried and sworn, the truth to speak upon the issue joined ; and after having heard the evidence, and on the 4th day of November 1875, during the same court rendered the following verdict, viz : "We the jury find for the plaintiff, and assess the damages at $1,392.05." Whereupon the defendant moved the court to set aside said verdict and grant it a new trial. Afterwards, on the 31st day of January 1876, the court granted the defendant's motion, and ordered that the verdict of the jury by set aside, and a new trial be granted to the defendant upon condition of its paying the costs of the former trial. To this order and judgment of the court the plaintiff has obtained a *supersedeas* from one of the Judges of this Court in vacation ; and it is now to be determined by this Court, whether the circuit court has committed such error in setting aside the said verdict and granting a new trial, as authorizes this Court to reverse the said order of the circuit court, and render judgment upon the verdict in favor of the plaintiff.

This case does not come before us as did the case of *Miller use &c.* v. *Insurance Company* 8. W. Va. 515. In that case the defendant demurred to the evidence, and the evidence adduced by each party was before the court. In that case the circuit court rendered judgment upon the demurrer to evidence in favor of the demurree (the plaintiff below) ; and this Court, for reasons in the opinion of the court filed therein, rendered judg-

ment affirming the judgment of the circuit court. In the case in judgment a trial by jury was had, a verdict in favor of the plaintiff rendered, and the circuit court on motion of the defendant set aside the verdict, and granted a new trial upon terms. The plaintiff excepted to the opinion and judgment of the court setting aside the verdict and granting a new trial in the case. The court has certified in the bill of exceptions in part the facts proved, and in part the evidence both verbal and written given in the case, and to my mind there seems to be a conflict in the evidence, to some extent, as to the authority of the plaintiff's witness Coen to change or authorize a change in the terms of the contract of insurance, after the policy of insurance was issued by defendant and forwarded so as to be binding on the defendant and otherwise. It further seems to me that the circuit court in setting aside the verdict of the jury, to some extent at least, must have passed upon the weight of evidence before the jury. This being the case the question arises, as to what position the exceptor to the opinion of the court in granting a new trial occupies before this Court; and by what rule or principle this Court is to be governed in reviewing the judgment of the court below granting a new trial. It seems that in some of the States a stronger case must be made to justify the disturbance of an order granting a new trial, than where one has been refused. *Roberts & Bro.* v. *Jones,* 30 Iowa R. 525; *Tezeler & Co.* v. *Jones,* 33 Iowa 234; The *New York Piano Forte Company* v. *Mueller,* 38 Iowa 552; *Frank Field* v. *David Kinnear et al.,* 5 Kan. 233; *Beatty* v. *Hatcher,* 13 Ohio St. 121; *Shafford* v. *Bradley* 20 Ohio 74; *Nagle* v. *Hornberger* 6 Ind. 69; *Huckstep* v. *O'Hair et al.,* 8 Ind. 253; *Leppar* v. *Enderson,* 9 Ind. 353; *Cronk* v. *Cole,* 10 Ind. 485.

Some of the authorities above cited assign as a reason for this rule, because the refusal to grant a new trial operates a final adjudication of the rights of the parties, and that the granting of a new trial by the

1877.
Special Term.

Miller *et al.*
v.
Insurance Co.

1877.
Spcial Term.

Miller *et al.*
v.
Insurance Co.

circuit court is a question of sound discretion which will not be disturbed unless a flagrant case of injustice is made to appear.. Others say "upon examination of the evidence we do not find such a clear and manifest preponderance of evidence in favor of the verdict, as would justify us in interfering with the order granting a new trial. On the other hand the evidence was conflicting; and had the court refused to grant a new trial, we should not have felt authorized to disturb the ruling. However we might be inclined to find from the evidence in the re cord, there is evidence in support of the verdict, that the court below, before whom the cause was tried, having the witnesses before it, with facilities superior to those afforded to us for determining the true weight of the evidence, has in the exercise of its sound discretion granted a new trial. We find nothing in the record to satisfy us that there has been any abuse of discretion."

Others say: "the order granting a new trial invites investigation and affords an opportunity for showing the truth. Hence a stronger case should be made, in order to justify our interposition, when a new trial has been granted than when it has been refused." Others say: "the effect of this determination is not to stifle investigation, but to allow another inquiry into the facts, and a further hearing upon the merits. In view of the fact, that a discretion is wisely lodged with the judge trying a case, which should not be controlled except in a clear case of abuse, it is a constant practice of this Court to refuse to disturb a ruling granting a new trial, even if we would have done the same thing, had a new trial been denied."

In the case of *Patterson, who sues for &c.* v. *Ford*, 2 Gratt.18, it was held that "where the case before a jury depends upon the credibility of witnesses, and the court below refuses to grant a new trial, this Court will not reverse the judgment." In that case Judge Baldwin, who delivered the opinion of the court, says at p. 25 : "there is surely a fair presumption in favor of the correctness of

a verdict; and when the judge, who presides at the trial, who has heard all the evidence, and witnessed the proceedings and manner of conducting the cause before the jury, is satisfied with the verdict and refuses a new trial, a supervising authority where it exists, but which of course cannot have equal opportunities of forming a just judgment, ought not to interfere without the strongest reasons for so doing. On the other hand, when the judge is dissatisfied with the verdict and grants a new trial some latitude must be allowed to his discretion." Again at p. 28 he says: "according to the principles of the common law and the English practice no evidence ought to be stated in the demurrer, but that offered by the adverse party; but in Virginia by an innovation, now fully established, the demurrer may state the evidence on both sides; but when the evidence adduced by the demurrant is contradictory to that of the opposite party, the effect of the demurrer is to admit the truth of the latter or, which is the same thing, to waive the demurrant's conflicting evidence." 1 Rob. Pr. 351, 352; *Green* v. *Judith* 5 Rand. 1; *Hansborough ex'ors* v. *Thorn*, 3 Leigh 147." See also *Muhleman* v. *Franklin Ins. Co.*, 6 W. Va. 508; *Miller use &c.* v. *Ins. Co.* 8. W. Va. 515; Judge Baldwin then proceeds: "Thus I think it will be seen that a bill of exceptions, when properly framed, to a decision of the judge upon a motion for a new trial, founded on the allegation that the verdict is contrary to evidence, is in substance and effect a demurrer to evidence; but it is a demurrer to evidence *after verdict*. This is strictly true where the judge grants a new trial; and it is virtually so when he refuses it, for the case is not brought before the Appellate Court until after a verdict against the exceptor upon the new trial. As a demurrer, it is moreover anomalous in this: that it is taken, not for the consideration of the court, in which the cause is tried but for the judgment of the Appellate Court. The bill of exceptions is not however properly taken, unless, strictly confined to the *facts* proved by the evidence;

for if any opening is left by the introduction of evidence as contradistinguished from the facts, on the supposition that the cause may have turned before the jury upon the credit and weight of the evidence, and so have furnished room for the discretion of the court, the appellate forum will not interfere with what may have been an exercise of that discretion. To do so would, I apprehend, much impair the value of jury trials."

In the case of *Grayson* v. *The Commonwealth* 6 Gratt. 712, it was held. "1. New trials are grantable at the instance of the accused in all criminal cases. 2. Motions for new trials are governed by the same rules in criminal as in civil cases. 3. A new trial will be granted where the verdict is against law, or where it is contrary to the evidence, or where the verdict is without evidence. 4. Where some evidence has been given which tends to prove the facts in issue, or the evidence consists of circumstances and presumptions, a new trial will not be granted merely because the court, if on the jury, would have given a different verdict. The evidence should be plainly insufficient to warrant the finding of the jury; and this restriction applies *a fortiori* to an Appellate Court. 5. Where the evidence is contradictory, and the verdict is against the weight of evidence, a new trial may be granted by the court, which presides at the the trial; but its decision is not the subject of a writ of error or *supersedeas* examinable by an Appellate Court. 6. Where the evidence is contradictory, the court, which tries the case, cannot be required to state in a bill of exceptions either the evidence or the facts proved by the witnesses respectively; it is enough to state that the evidence was contradictory." In the case of *Blosser* v. *Harshbarger* 21 Gratt. 214, a portion of the principles referred to in the case last cited are referred to and approved by Judge Christian, who delivered the opinion of the court; but all the principles decided in said case are not referred to—only such as were applicable to the case then before the court. Judge Christian, however in his

opinion at p. 216 says: "For in the Appellate Court there is superadded to the weight, which must always be given to the verdict of a jury fairly rendered, that of the opinion of the judge who presided at the trial, which is always entitled to peculiar respect upon the question of a new trial." In the case of *Brugh* v. *Shanks*, 5 Leigh 598 it was held among other things, "that where there is conflicting testimony, and a jury has to decide on the credit of witnesses, the power of the court to grant a new trial, ought to be very cautiously exercised. A new trial, asked on the ground that the verdict is contrary to evidence, is denied ; the opinion of the court which tried the cause on such a point is entitled to peculiar respect in an Appellate Court."

In the last named case at p. 602 Judge Tucker in his opinion says: "The court, whose duty it is to superintend the trial and decide upon the law of the case, ought not rashly to invade the province of the jury, to which belongs the power of deciding upon the facts, upon the weight of evidence and the credibility of witnesses; and though we cannot accede to the broad proposition, that a new trial will never be granted if the evidence is contradictory, *Anon.* 1 Wils. 22; *Swain* v. *Hall*, 3 Wils. 47, yet we have the best authority for saying, that it is a power which should be very cautiously exercised."

From the foregoing authorities it seems to be settled that the trying court may grant a new trial, where the evidence is contradictory and the verdict is against the weight of evidence. But where the evidence is contradictory, the power of the court to grant a new trial should be very cautiously exercised. If the opinion of the court, which presided at the trial, is entitled to peculiar respect in an Appellate Court, where it denied a motion for a new trial upon the ground, that the verdict was contrary to evidence, to what respect is it entitled, when it grants a new trial upon the weight of evidence, where the evidence is contradictory, or that the verdict is contrary to evidence?

Upon this subject Judge Baldwin, in his opinion in the

*1877.
Special Term.*

*Miller et al.
v.
Insurance Co.*

*Sallabus 1, 2, 3.*

1877.
Special Term.

Miller *et al.*
v.
Insurance Co.

case of *Patterson* v. *Ford* 2. Gratt., says at p. 26: "It must be admitted that if the question of granting or refusing a new trial is to be treated as a matter of discretion, an appellate forum is but ill adapted to its safe and correct decision. In that respect any tribunal, by which the question is to be decided, ought to have before it all the circumstances in full developement, all the details of the evidence without substraction or diminution, and thorough information of the exact credit and weight due to the testimony of the several witnesses. All this the judge who presides at the trial has the best opportunities of acquiring; but how is it to be transferred to paper, and carried to the Appellate forum? Let those conversant with jury trials give the answer." In the case of *Bennet* v. *Hardaway*, 6 Munford 125, Judge Roan, who delivered the opinion of the court, at p. 129, 130, says: "Although the bill of exceptions does not state on what ground the motion for a new trial was made, yet having stated none other, and the evidence being contrariant and contradictory, as aforesaid, we are obliged to infer, that the ground was, that the verdict was contrary to evidence; and the question is, whether it is competent for a party to carry *all* the *evidence* to the Appellate Court by a bill of exceptions, and on the ground of *it* to reverse a judgment of the court below refusing to grant a new trial. It does not follow that a judge believes every witness who gives evidence before him as he may well hesitate to do, from the manner of testifying, and other extraneous circumstances; nor *can* he do it, when they conflict with one another. It is evident therefore, that in this case the opinion of this Court might be founded upon the testimony of witnesses, who were discredited both by the jury and the court below. This Court only sees the evidence on the *record*; and on *paper* the credit of every witness is the same, who is not postively impeached. This would be for this Court not only to revise and reverse the opinion of the court below on a question, touching the weight of evidence, and the credit of the wit-

nesses, but to do it in the dark, or at least with lights inferior to those possessed by that court. That court while it can faithfully transmit to this the actual words spoken by the witnesses, can give it no *fac simile* of the manner of testifying, the hesitation or partiality manifested on the trial, or the like with respect to these important circumstances, as they relate to the weight of testimony and credibility of witnesses; this Court is entirely in the dark; the advantages are exclusively confined to the court of trial. It is an important principle that the revising court should have the same lights, and act upon the same *data*, as the inferior court. This is always so, when the case depends upon a question of law; for that question, being permanently spread upon the record in the trying court, is carried up to all the revising tribunals. It is a further principle, equally important, that where this advantage is wanting in the revising court, the judgment of the court below will preponderate. On this principle this Court acted in the case of *Chancy* v. *Saunders*, 3 Munf. 51. On this principle, it is held in England, that a new trial will be granted after a trial at bar, rather than after trials at *nisi prius*; because the former is founded upon what appeared to the *whole court*; whereas the latter are founded upon the opinion of a single judge. 1 Burr. 394, &c." It seems to me, from what has preceded, that in a case where a verdict is rendered and the evidence is contradictory, or where in the opinion of the trying judge the verdict is contrary to evidence, and he grants a new trial, that his opinion in such case is and must in the nature of things be entitled to peculiar respect in the Appellate Court. The same course of reasoning applies to a great extent, if not altogether, as to the respect the opinion of the trying judge is entitled to, in case a new trial is granted by him as in case it is refused by him.

Chapter 17 of the Acts of the Legislature of 1872-3, p. 56, approved December 21, 1872, section 1 authorizes the granting of a *supersedeas* or writ of error in any case, where

*1877.*
*Special Term.*

*Miller et al.*
*v.*
*Insurance Co.*

*Syllabus 4.*

1877.
Special Term.
──────────
Miller *et al.*
v.
Insurance Co.
there is an order granting a new trial, without waiting for the new trial to be had.  This provision cannot be considered as modifying or repealing the common law principles governing the Appellate Court, in cases where new trials are granted.  When a party has obtained a writ of error or *supersedeas* from this Court to the order of an inferior court granting a new trial, this Court must consider and dispose of it according to the principles of law governing an appellate court in such cases. From the authorities cited bearing upon this case, and

Syllabus 5.   upon principle it seems to me, that generally where the evidence in the cause is materially conflicting as to a material point, or points, involved in the issue, and the circuit court sets aside the verdict of the jury and grants a new trial, an Appellate Court should not reverse the order granting such new trial.  And also, that where there is apparently no conflicting evidence, and the inferior court grants a new trial upon the ground that the verdict is contrary to the evidence, or is not authorized by the evidence, or for any other cause, where all the facts proven in the cause are not stated in the bill of exceptions, the Appellate Court should not reverse the order of the court below granting a new trial, unless it manifestly and clearly appears that the court erred in granting the new trial.  And also, it seems to me, from the authorities cited and upon sound principle, that

Syllabus 6.   generally a stronger case should be made to justify the disturbance of an order granting a new trial, than where one has been refused, because in the former case the only legitimate result is another trial of the cause, at which it is to be presumed justice will be done, as near as may be; and in the latter, if the refusal be affirmed, generally the defendant is left without remedy for relief, no matter how great the injustice done him.  But I do not mean to intimate, that when a new trial has been refused by the trying judge, a new trial should be granted, except in conformity with the well-settled principles of law regulating the granting of new trials generally.

Adopting the foregoing principles so far as applicable to this case, which seem to be settled, when the court below grants a new trial, and considering that a question, made in the cause hereafter noticed, is with the plaintiff, I do not feel authorized, as the case is presented by the bill of exceptions therein, to decide or hold that the circuit court erred in granting a new trial in this cause. While the trying Judge, as it is said, may refuse to state in the bill of exceptions, where it refuses a new trial, either the facts proven or the evidence, when the evidence is contradictory, yet with us a practice has grown up, which seems to be sanctioned in cases where all the facts proved are not stated, to state in the bill of exceptions all the evidence adduced by either party at the trial. In such case the Appellate Court will not consider the parol evidence of the objector to the verdict, so far as it is conflicting with that of the appellee; and when the evidence thus viewed does not show that the verdict was contrary thereto, or was not authorized thereby, the judgment should not be reversed and a new trial awarded. *Newlin* v. *Beard et al.*, 6 W. Va. 110.

But I do not think this rule can be properly or safely applied, as to the evidence of the objector to the verdict, where the court grants a new trial for reasons hereinbefore stated, and the authorities cited bearing upon this subject. I do not mean by anything I have said herein, to intimate an opinion that the verdict of the jury rendered in this cause ought or ought not to have been set aside by the judge for any cause, especially as there will probably be another jury trial which should not in the least be influenced by the fact that the trying Judge set aside the verdict heretofore rendered in the cause, and this Court refused to reverse and set aside the order of the trying Judge granting a new trial. The jurors in a future trial, should one be had, should be left free to decide all matters of fact in the cause, and render their verdict thereon upon the issue joined, accord-

ing to their consciences and best judgment under their oaths. It is true that as to matters of law, upon which the court may instruct them, they should be governed by the law as the court shall expound it.

There is a question of construction arising upon the record in this cause, which I think should now be decided. The question arises upon the face of the policy of insurance, on which the action is founded, and the evidence. The policy says, "with permission to navigate the Mississippi and tributaries, except the Missouri and Arkansas rivers." The evidence shows that the said steamboat was lost on Cypress bayou, and said bayou empties into Red river, and Red river empties into the Mississippi river. The defendant's counsel argue, that under these circumstances the defendant is not liable upon the policy of insurance, because said bayou, which the boat was navigating when lost, is not and cannot be considered a tributary to the Mississippi, within the meaning and intent of the policy of insurance, but is, and only should be considered, a tributary of Red river. May, in his valuable work on Insurance, in paragraph 174, pp. 181, 182, says: "It was early held, with special reference to contracts of marine insurance, that the *strictum jus* or *apex juris* is not to be laid hold on, but they are to be construed largely for the benefit of trade and for the insured—a rule, which under different forms of expression, has obtained with reference to all kinds of insurance to the present day. Having indemnity for its object, the contract is to be construed liberally to that end; and it is presumably the intention of the insurer, that the insured shall understand, that in case of loss he is to be protected to the full extent, which any fair interpretation will give. The spirit of the rule is, that where two interpretations equally fair may be given, that which gives the greater indemnity may be given, that which gives the greater indemnity shall prevail." Again, at paragraph 175, he says: "No rule, in the interpretation of a policy, is more fully established, or

Syllabus 7.

Syllabus 8.

more imperative and controlling, than that which declares, that in all cases it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to the indemnity, which in making the insurance it was his object to secure. When the words are, without violence, susceptable of two interpretations, that which will sustain his claim and cover the loss, must in preference be adopted. While courts will extend all reasonable protection to insurers, by allowing them to hedge themselves about with conditions intended to guard against fraud, carelessness, want of interest, and the like, they will nevertheless enforce the salutary rule of construction, that as the language of the condition is theirs, and it is therein in their power to provide for every proper case, it is to be construed most favorably to the insured." "Nor is this an arbitrary rule of construction; on the contrary it follows from the very nature of an insurance, as a contract of indemnity, and has been adopted and confirmed from the conviction that the construction to which it leads is probably that which the real intention of the parties requires shall be followed. (*Dorr* v. *Whither*, 1 Hall 174; opinion of Jones, C. J.) *Westfall* v. *Hudson River Fire Insurance Company*, 2 Duer, opinion of Judge Duer, p. 495."

In construing an instrument, prepared by the insurers, it ought to be read most strongly against the makers, especially where the terms or language used are of doubtful meaning, for are ambiguous. May on Insurance, paragraph 176; *Chandler* v. *St. Paul Fire and Marine Insurance Company*, 18 Am. R. 385, 387. It is proven in this case that said Cypress bayou was navigable for steamboats, and as before stated, empties into Red river, which empties into the Mississippi. Now, while it cannot perhaps be said that said bayou empties immediately into the Mississippi river, yet its flowing water mingled with the water of Red river, and Red river contributes to the Mississippi, and in a general sense, it seems to me, that it may be said that said bayou is a tributary of the

1877.
Special Term.

Miller *et al.*
v.
Insurance Co.

Syllabus 9.

Mississippi, within the meaning of the terms employed in the policy of insurance in this case; and that it should be so held under the authorities above cited upon the subject of construing policies of insurance. The insurance company or its officers prepared the policy of insurance, and if said company intended to confine the permission to navigate said steamboat to the immediate tributaries of the Mississippi only, they should have so said. It has been said, that "A policy ought to be so framed, that he who sees can read. It ought to be framed with such deliberate care that no form of expression by which, on the one hand the party assured can be caught, or by which, on the other, the company can be cheated:" 18 Am. R. 387.

For the reasons hereinbefore stated it seems to me, that the order of the circuit court of Ohio county, rendered in this cause on the 31st day of January 1876, setting aside the verdict of the jury rendered in this cause on the 4th day of November 1875, and granting a new trial on the terms therein stated, should be affirmed, with $30.00 damages and costs, to the Citizens' Fire, Marine and Life Insurance Company, of Wheeling, the defendant in error, against Isaac Miller, the plaintiff in error.

The other Judges concurred.

JUDGMENT AFFIRMED.