# WHEELING.

## JOHN A. SHEPPARD, ADM'R *v.* PEABODY INS. CO.

Submitted August 3, 1882—Decided April 7, 1883.

(*WOODS, JUDGE, Absent.)

1. A demurrer to a declaration containing several counts should be overruled, if any one count is good. (p. 377.)

2. The common counts in an action of *assumpsit* are good on demurrer, when they are in the form prescribed by the English judges, set out in Conway Robinson's forms, pages 550, 551 and 554, though both the consideration and promises are stated after a *whereas* ; but this mode of statement is in apparant violation of the general rule of pleading, that whatever facts are necessary to constitute the cause of action, should be stated directly and positively. (p. 378.)

3. The failure to file a bill of particulars in such an action is not ground for a demurrer. (p. 379.)

4. A policy of insurance against fire is a contract of indemnity ; and the assured must have an insurable interest in the property, when it is insured, and when the loss by fire occurs. (p. 379.)

5. But if the policy on its face sets out such an insurable interest, as for example ownership of the property insured, this alone establishes, that the assured has *prima facie* an insurable interest ; and if this be disputed, the insurance company must by proper proof show, that he had not an insurable interest. (p. 380.)

*Case submitted before Judge W. took his seat on the bench.

6. If a party has the care and custody of property, he may insure it in his own name, even though he be not responsible for its safety, if he really insured it for the owner, though this be not expressed on the face of the policy, for in such case, he has an insurable interest; and in general to give a party an insurable interest in property it is not necessary, that he should have any actual right of property either legal or equitable in the subject insured, but it is sufficient, if he or those whom he represents will suffer any sort of loss by its destruction. (p. 380.)

7. If the personal estate of a decedent be insufficient to pay all his debts, the administrator of such decedent has an insurable interest in the buildings, which belonged to his decedent; for our statute in such case authorizes him as administrator to bring a suit in chancery to have such buildings sold to pay the debts of the decedent. (p. 385.)

8. *Quære:* Would an administrator have such an insurable interest, if the personal estate was sufficient to pay all the decedent's debts? (p. 386.)

9. If the administrator of a decedent has such insurable interest, he has a right to recover on the policy in case of loss by fire, though when the loss occurs there are abundant real assets to pay all the decedent's debts, if they have not been actually paid. (p. 386.)

10. An insurance company, which establishes a local agency, is responsible for all the acts and declarations of its agent within the scope of his apparent authority. The question in such cases is not what authority he in fact has, but what were his apparent powers, that is, what powers had the assured a right to believe were was given to the agent. (p. 381.)

11. A policy of insurance may be continued in force by a subsequent contract made before, at the time of, or after the policy had expired. (p. 387.)

12. Such a continuance of a policy differs from a new contract of insurance, as by it the original contract is kept up; and in case of loss the original policy is the basis of action in connection with the contract of renewal or continuance; and if changes are intended to be made, it is properly done by simply expressing the changes in the renewal or continuance-receipt (p. 382.)

13. If such receipt be ambiguous on its face, it may be explained by the situation of the parties or by the surrounding circumstances existing when it was executed, but not by verbal declaration of the parties. (p. 282.)

14. A denial by an insurance company of its liability on other grounds, before any preliminary proofs are made, and before the time within which such proofs are to be made by the terms

of the policy, is in law a waiver of the conditions of a policy requiring such proofs. (p. 383.)

16. If an instruction given by a court on an abstract question is erroneous, the Appellate Court will not reverse the judgment of the court below on that account, if it appears that no injury could have resulted to the plaintiff in error from such erroneous instruction ; but if such erroneous instruction was calculated to mislead the jury to the injury of the plaintiff in error, the Appellate Court will reverse the judgment, and award a new trial on that account. (p. 394 )

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Jefferson, rendered on the 15th day of November, 1879, in an action at law in said court then pending, wherein John A. Sheppard, administrator of Amos Sheppard deceased, was plaintiff, and The Peabody Insurance Company was defendant, allowed upon the petition of said company.

Hon. John Blair Hoge, judge of the third judicial circuit, rendered the judgment complained of.

GREEN, JUDGE, furnishes the following statement of the case :

At the January rules, 1876, John A. Sheppard, administrator of Amos Sheppard, deceased, filed his declaration in *assumpsit* in the circuit court of Jefferson county, against the Peabody Insurance Company at Wheeling, W. Va. And in his declaration were two counts, one a special count on a policy issued to him, by the said company, whereby it insured John A. Sheppard, administrator of Amos Sheppard, for one year from August 15, 1872, against loss by fire, to the amount of one thousand dollars on his barn in said county. The policy of assurance was set out at length in the declaration, and filed with it as a part thereof. It is unnecessary to state its provisions, but it will suffice to state, that there was in it all the usual provisions in such a policy, and its tenth clause was as follows: " This insurance the risk not being changed, may be continued for such further time as shall be agreed upon, provided the premium therefor is paid and endorsed on this policy *or a receipt therefor given* for the same."

This first count in the declaration sets out, that ten dollars,

which was the premium to be paid for this insurance for one
year, was paid before this policy was issued and, that on the
1st of August, 1873, which was fifteen days before it expired,
it was renewed for one year, from August 1, 1873, to August
15, 1874, the plaintiff paying the premium of ten dollars on
the insurance for another year, and by agreement in writing,
it was continued for this time; and this agreement is filed
with the declaration signed by the president and secretary of
the company, and countersigned by George E. Cordell, the
agent of said company in Jefferson county.  The count then
proceeds: "And the said plaintiff further saith, that after-
wards, to-wit, on the 3d day of September, 1874, in consider-
ation of the payment of the sum of ten dollars by the plaintiff
to the defendant, the said policy of insurance, by an agree-
ment in writing duly subscribed in that behalf by one George
E. Cordell, agent of the defendant at Charlestown in the
county aforesaid, *the said policy of insurance* was continued
from the day last named until the 3d day of September,
1875."

The declaration alleges, that this barn was afterwards, to-
wit, on the 1st day of April, 1875, wholly destroyed by fire.
There are other allegations in this first count not deemed nec-
essary to be stated.   The second count and the conclusion of
the declaration are as follows :   "And whereas, the said de-
fendant, was on the 1st day of April, 1875, indebted to the
plaintiff in the further sum of one thousand dollars for money
had and received by the defendant, for the use of the plain-
tiff; and whereas, the defendant afterwards, to-wit, on the
1st day of April, 1875, in consideration of the promises re-
spectively became liable and promised to pay the said several
sums of money respectively to the plaintiff on request, yet
the said defendant disregarding his said promise, has not
paid any of said money or any part thereof to the plaintiff's
damage two thousand dollars, and thereupon suit is
brought."

This declaration was demurred to by the defendant, and
the court overruled the demurrer, and the defendant pleaded
*non-assumpsit* and issue was joined.   This issue was tried by
a jury, which being unable to agree were discharged, and
afterwards it was again tried by another jury, which on

November 15, 1879, rendered a verdict for the plaintiff and assessed his damage at one thousand dollars; and thereupon the court rendered a judgment in favor of the plaintiff in accordance with this verdict, and the defendant moved the court to set aside this verdict and arrest the judgment in this case, which motion the court overruled, and the defendant took his bill of exceptions.

There was no ground for asking this new trial or for arresting the judgment, excepting only errors supposed to have been committed by the court, and to which exceptions were taken.   These exceptions are as follows:

### FIRST BILL OF EXCEPTIONS.

"Be it remembered that on the trial of this cause, the defendant, having given evidence to support the hypothesis embraced in his fourth instruction, prayed the court to grant the same, which was as follows:

"4th instruction.—'The court instructs the jury that by the terms of the policy filed as a part of the plaintiff's declaration, the insured in case of loss would only be entitled to recover according to his interest in the property insured; and that if they find from the evidence that the estate of Amos Sheppard, dec'd, proved to be solvent, and his debts have all been provided for by the sale of other assets, without the necessity of resorting to the alleged policy of insurance, then that his administrator, John A. Sheppard, has no insurable interest in said property, and cannot recover in this suit.'"

But the court declined to give this instruction and the plaintiff excepted.

### SECOND BILL OF EXCEPTIONS.

"Be it remembered that in this case the plaintiff, to support his case as set out in his declaration, testified that the following receipt was given by George E. Cordell, the general agent of the defendant, on the day of its date:

"'Rec'd of John A. Sheppard, adm'r, ten dollars, am't due on Peabody Insurance policy, commenced 3 day of September, 1874, till 3, 1875.

"'GEO. E. CORDELL, *Agent*,
"'*Charlestown, W. Va.*'

" 'And the defendant gave evidence tending to show that the words 'Peabody Insurance Company' therein, were inserted by a clerical error for 'Nail City Insurance Company,' and that the plaintiff a few days afterwards had been given a policy in the Nail City Insurance Company by George E. Cordell, who was also agent of the last mentioned Company; and further to support his case, the plaintiff introduced in evidence a receipt as follows:

" 'CHARLESTOWN, WEST VA., Sept. 3, 1874.

" 'Received of John Amos Sheppard eleven dollars and twenty-five cents in full for insurance on barn in Peabody Ins. Co., Wheeling.

" 'GEO. E. CORDELLE, *Agent,*
" *Charlestown, Va.'*

" 'The defendant having given evidence tending to show, that the latter receipt, since its execution, and whilst in the hands of the plaintiff, was altered with fraudulent intent, prayed the court to instruct the jury as follows:

" 'The court further instructs the jury that if they believe from the evidence that the plaintiff, John A. Sheppard, with fraudulent intent, altered the receipt for eleven dollars and twenty-five cents produced in evidence, then they are to deny him all benefit from the said receipt as evidence of a contract, or for any other purpose whatever.'

" 'Which instruction the court refused to grant in the form asked, but modified the same by striking out the words, '*Or any other purpose whatever*' in the conclusion of said proposed instruction. To which refusal and modification the defendant excepted."

#### THIRD BILL OF EXCEPTIONS.

"On the trial of this case, the defendant prayed the court to give the following instruction:

" 'The court instructs the jury that the burden of proof is on the plaintiff to make out his case by a preponderance of testimony, and that if they find the evidence evenly balanced, their verdict must be for the defendant,' which the court refused, but granted the same as modified by the court so as to read as follows:

" 'The court instructs the jury that the burden of proof is on the plaintiff to make out his case by a preponderance of testimony, and that if they find the evidence evenly balanced, their verdict must be for defendant. In other words, the plaintiff's claim to recover in this action must be established by evidence which in the opinion of the jury outweighs the evidence produced by the defendant to resist the plaintiff's claim. If, therefore, in the opinion of the jury, the weight of evidence on each side is exactly equal, the plaintiff must fail in his recovery.'

"To which refusal and modification the defendant excepted."

### FOURTH BILL OF EXCEPTIONS.

"On the trial of this case, the plaintiff having produced in evidence the receipt No. 1, as set out in the defendant's second bill of exceptions, the defendant prayed the court to construe the same by granting the following instruction:

" 'That the receipt of the 3d day of September, 1874, which is for ten dollars, and has been exhibited to the jury, considered as a contract of insurance, could not renew a policy which had expired on the 15th of August, 1879;' which the court declined; and thereupon the defendant excepted."

### FIFTH BILL OF EXCEPTIONS.

"On the trial of this case, the parties having produced evidence as set out in the defendant's preceding bills of exceptions, the defendant prayed the court to instruct the jury as follows:

" 'That in this action, if the plaintiff recover at all, he must recover upon a renewed policy of insurance in accordance with his declaration, and cannot recover upon a new policy as an original contract;' but the court declined on the ground that the substance thereof was fully covered by a prior instruction of defendant which had been granted as follows:

" 'The court further instructs the jury that the plaintiff having declared upon the renewal or continuation of a policy of insurance taken out by him in the defendant's company, which he sets out in his declaration, he cannot recover in this action upon an original and subsequent contract of insurance

made with the defendant, though they should believe such original and subsequent contract to have been made.'

"To which refusal of the court the defendant excepted."

### SIXTH BILL OF EXCEPTIONS.

"On the trial of this cause, the parties having produced evidence as set out in the foregoing bills of exceptions, and the plaintiff having testified that on the 3d of September, 1874, he applied to George E. Cordell, the general agent of the Peabody Ins. Co., for a renewal of his policy, as set out in the declaration, and that the said Cordell received the premium therefor but afterwards delivered to the plaintiff a different policy in another company of which he was also the agent. Thereupon the court gave the following instruction:

" 'If the jury shall believe from the evidence that George E. Cordell was the general agent of the Peabody Insurance Company, and that the plaintiff applied to him for a continuance, reinstatement or renewal of the policy filed with the declaration, and that the said agent received the premium therefor but afterwards delivered to the plaintiff a different policy in another company, whether such delivery was made by mistake or intentionally, then the defendant is bound by the act of its agent in receiving the said premium as the consideration of such renewal as if one of its own policies had been delivered to the plaintiff by the said agent.'

"To which the defendant excepted."

### SEVENTH BILL OF EXCEPTIONS.

"On the trial of this case, the parties having produced evidence as set out in the foregoing bills of exceptions, and the evidence being concluded, the court, at the instance of the plaintiff, gave the following instructions:

### "PLAINTIFF'S INSTRUCTION NO. 1.

" 'If the jury believe from the evidence that the receipt for ten dollars, submitted to them in evidence was executed by Geo. E. Cordell and delivered to the plaintiff, that the said Cordell was, at the time the said receipt was so given, the agent of the defendant to transact the business of insurance for it, and as such receipted for premiums known as renewal premiums, and shall further believe from the evidence that

the said receipt was given to renew the policy in the declaration mentioned, they will find for plaintiff whatever amount of loss within the limits of the amount named in the policy they shall find from the evidence was sustained by him by fire between the date of the said receipt and the 3d day of September, 1875.'

#### "plaintiff's instruction no. 2.

" 'If the jury believe from the evidence that the defendant was notified of the loss accruing to the plaintiff under the policy filed in this cause, and that the said policy was renewed or continued by the said defendant so as to be a subsisting policy at the time the said loss occurred, the plaintiff is entitled to recover whatever loss it may prove covered by the policy and within the limits of the sum mentioned therein, even although they shall believe that the proofs of the said loss required by the conditions of the said policy were not made, *provided* they shall further believe from the evidence that within the time mentioned in the said policy for the said proofs, the defendant declined to pay the said loss on other grounds than the failure of the plaintiff to furnish the said proofs.'

#### "plaintiff's instruction no. 3.

" 'If the jury believe from the evidence, that the policy in the declaration set forth, was by renewal or continuance a subsisting policy at the time the loss complained of by the plaintiff occurred, and that the defendant knew that the plaintiff was interested in the property insured only as administrator of Amos Sheppard, the contract of insurance thus evidenced is obligatory on the defendant to the extent of the loss of the property covered by it and proved within the limits of the amount mentioned in said contract.'

#### "plaintiff's instruction no. 4.

" 'If the jury believe from the evidence that a contract for the insurance of the plaintiff's barn, insured by him as administrator, was made by him with George E. Cordell, with reference to and for the purpose of reinstating or renewing the policy with the declaration filed, so that said policy was continued until after the loss complained of occurred, and shall further believe from the evidence that the said Cordell was

the general agent of the Peabody Insurance Company to transact the general business business for it, then the plaintiff is entitled to recover whatever loss, within the sum covered by the policy, the jury shall believe from the evidence has accrued to the plaintiff, unless they further believe from the evidence that the general powers of the said agent were so restrained by the company as to prohibit the said agent from making the contract herein first mentioned, and that the plaintiff had notice of the said prohibition.'

"To the granting of which the defendant excepted, and the defendants have obtained an appeal and *supersedeas* to the judgment rendered on November 15, 1879."

*R. G. Barr* for plaintiff in error cited the following authorities: 10 W. Va. 507; 8 W. Va. 444; 6 Harr. & J. 408; Code, ch. 125 § 11; 8 Gratt. 1; 10 W. Va. 470; 8 W. Va. 218; Fland. (Fire Ins.) 348; 27 N. Y. 163; 9 Bosw. 404; 45 N. Y. 454; 8 Abb. Pr. (N. Y.) 261.

*William H. Travers* and *Grove & Brown* for defendant in error cited the following authorities: Code, ch. 125 §§ 9, 29; 6 Gratt. 130; 3 Rob. (New) Prac. 553; 28 Gratt. 389; 24 N. Y. 302; Wood Fire Ins. 299; 10 W. Va. 524; 1 Saund. 55; 4 Min. Inst. part II. p. 1006; 16 Gratt. 313; 8 W. Va. 474; 10 W. Va. 507; 3 Leigh 250; 12 Serg. & R. 131; 1 Penn. 386; 26 Gratt. 854; *Id.* 874; May Ins. 573, 574; Acts 1871–2 ch. 79 § 1; Code, ch. 36 § 44.

Green, Judge, announced the opinion of the Court:

The first enquiry is, did the court below err in overruling the demurrer to the declaration? As the demurrer was to the entire declaration and not to each count, if either count was sufficient, the court did not err. See *Nutter* v. *Sydenstricker*, 11 W. Va. 535, syllabus 2 and 543 and cases cited. The second or common count for money had and received, is good in this case. It is objected to because both the consideration for the promise and the promise itself, is stated after a *whereas*. It is unquestionably true, that it is a general rule of pleading, that whatever facts are necessary to constitute the cause of action should be directly and positively stated in the declaration, and not by way of recital; but though this

rule be apparently violated, it has been expressly decided by the Court, that if in *assumpsit* in this common indebitatus count the promise is stated after a *whereas*, though the promise is the very gist of the action, yet such a count so framed, will be held good on demurrer. See *Barton & Co.* v. *Handsford*, 10 W. Va. 470.

This conclusion was reached because this was the manner, in which the judges of England had prescribed for such a count in an action of *assumpsit;* and 'they decided, that such a mode of stating the promise in such a count was good, independently of their having prescribed this as its proper form. And while the Virginia courts had repeatedly sustained demurrers in other forms of action, because necessary facts were not stated in the declarations positively, but by way of a recital as after a *whereas*, yet they had never held, that a demurrer to a count in a declaration in *indebitatus assumpsit* would be defective, because the promise was stated after a *whereas*, and there was supposed to be a difference between such a case and other kinds of suits, when statements of necessary facts were made after a *whereas*. We therefore held, that we would not go any further than the Virginia courts had gone, in enforcing this general rule of pleading, that all necessary facts should be stated in the declaration positively, and not after a whereas or by way of recital.

It is true, that we did not in the case of *Barton & Co.* v. *Handsford* decide, that in a common count in a declaration on *assumpsit*, the consideration might be stated after a *whereas*, but only, that the promise might be so stated. But as the promise is the very *gist* of the action of *assumpsit*, it would seem to follow, that if we permit it to be thus stated after a *whereas*, we could not consistently hold, that in such a count the consideration could not be stated after a *whereas;* especially when the forms of common counts, as prescribed by the English judges, not only stated the promise after a *whereas*, but also the consideration. See Conway Robinson's Forms, pages 550, 551 and 554.

In this case, the second or common count follows the form substantially so prescribed by the English judges, and I think must be held good on demurrer. The circuit court therefore, did not err in overruling the demurrer to the dec-

laration. It is true, it is urged, that this common count was fatally defective, because no bill of particulars was filed with the declaration. But this Court has expressly decided, what would seem to me to be obvious enough before our decision, that the failure to file a bill of particulars or its being too vague when filed, was no ground of demurrer. See *Abell* v. *Penn. Mutual Life Ins. Co.*, 18 W. Va. p. 400, 412, 413, and *Choch* v. *Guthrie*, 15 W. Va. 113, 114.

The next enquiry is, did the court err in giving any instruction to the jury excepted to by the defendant, or in refusing to give any instructions offered by him, or in improperly modifying those given? Before considering these instructions given and refused by the circuit court, I will consider some general principles of law applicable to the questions, which were presented during the trial of this case in the court below.

It may be regarded as well settled, that a policy of insurance against fire, is a contract of indemnity against loss by fire, and that the assured must have an interest in the property insured. See *Quarrier, Trustee,* v. *Insurance Co.*, 10 W. Va. p. 522 and authorities there cited. This interest must be existing, as a general rule, both when the policy is issued and when the loss occurred. But it would be a great error to assume, that by an insurable interest is meant *property* in the subject insured. The assured has in his property insured an insurable interest; whenever he holds such a relation to it, that its destruction by fire would involve him in pecuniary loss or would involve others in pecuniary loss, for whom he acts or whom he represents. As for instance, a common carrier has an insurable interest in the goods carried by him, which he may insure to their full value, without regard to his liability to the owner of the goods. *Crowley* v. *Cohen*, 3 B. & Ad. 478; *London & Northwestern Railway Co.* v. *Glyn*, 1 El. & El. 652. So has a warehouseman, though he is liable only for his own negligence to the owner. *Waters* v. *Monarch Assurance Co.*, 5 El. & Bl. 870. And to give a party an insurable interest in property, it is not necessary that he should have any pecuniary interest therein, or that he should be even responsible for its safekeeping. If he has the care or possession of the property, he may insure in his own

name for the benefit of others, the owners, and the insurance will inure to their benefit upon their subsequent assent to the insurance, even when this assent is after the loss has occurred. *Waring v. Indemnity Insurance Co.*, 45 N. Y. 606. (6 Am. Rep. 146).

As I understand it, wherever an insurable interest exists in an agent, he may as a general rule, insure for the entire value and recover the same for the benefit of the owners, over and above his own interest, whenever the assurance was effected for that purpose, though the agent was not responsible to the owners, and they were not aware of any insurance for their benefit. *Waters v. Monarch Insurance Co.*, 5 El. & Bl. 870. And policies in such cases, may be issued "for the benefit of whom it may concern," and then any person, who has an insurable interest therein at the time of the loss, *and whose interest was intended to be covered by the policy*, may recover thereon.

It is obvious, that the main object of the law in requiring the insured to have what is called an insurable interest in the property insured, is. to discourage and prevent parties having no control or management of property, and no sort of interest in its preservation from fire but mere strangers to the property, obtaining policies on such property against its destruction by fire. Such policies would amount to nothing but wagers, whether the property should be destroyed by fire in a specified time. And public policy, rather than justice to the insurance company requires, that the law should pronounce, as it does, such policies void.

Every policy of insurance against loss by fire, on its face, professes to show, that the insured has an insurable interest in the property; and in any controversy between the insured and the company, this policy on its face, is sufficient *prima facie* evidence, that the insured has an insurable interest in the property; and if the company seeks to avoid its contract by claiming, that it was but a wager, contrary to public policy, the burden of overcoming the *prima facie* evidence to the contrary, on the face of the policy, is upon the company, which it must meet by proving, that in fact the insured had no insurable interest in the property.

It is true, that the declaration must allege such insurable

interest in a general way, but this is proven *prima facie* by the mere production of the policy. And if the company relies on the fact, that the insured really had no insurable interest, it must establish its defense by proper proof. See *Nichols et al. v. Fayette Ins. Co.*, 1 Allen (Mass.) 63; *Fowler v. N. Y. Ins. Co.* 23 Barb. (N. Y.) 143; *Franklin v. National Ins. Co.* 43 Mo. 491.

With reference to the authority possessed by the agent of a fire insurance company to do certain acts, it is true that the reports of judicial decisions are filled with the efforts of insurance companies, by their counsel, to establish the doctrine, that they can through parties in their employ make all the efforts, which they actually do ordinarily make to get persons to insure in their companies; and yet, after having done so, limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy; the argument being, that as to all other acts of the agent, he is the agent of the assured. And as stated in *Insurance Company v. Wilkinson*, 13 Wall. 255, "This proposition is not without support in some of the earlier decisions on the subject. The tendency of the modern decisions in this country is steadily in the opposite direction. The powers of the agent are *prima facie* co-extensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals." *Bebee v. Hartford Ins. Co.*, 25 Conn. 51; *Lycoming Ins. Co. v. Schollenberger*, 8 Wright 259; *Beal v. The Park Ins. Co.*, 16 Wis. 257; *Davenport v. Peoria Ins. Co.*, 17 Iowa 276.

An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal. *Savings Bank v. Charter Oak Ins. Co.*, 31 Conn. 517; *Horwitz v. Equitable Ins. Co.*, 40 Mo. 557; *Ayres v. Hartford Ins. Co.*, 17 Iowa 176; *Howard Ins. Co. v. Bruner*, 11 Harris 50." And the decisions sustain the position, that the company is bound by all the acts of its agents within the scope of his *apparent* authority, unless notice is given the assured, that with reference to matters within the scope of his apparent authority certain limitations are imposed upon

the agent. The question is, not what the powers of the agent in fact were, but what were his apparent powers, that is what had the assured a right to believe were given to the agent. *Columbia Ins. Co.* v. *Cooper*, 50 Pa. St. 331; *Insurance Co.* v. *Wilkinson*, 13 Wall. (U. S.) 222; *Eclectic Life Ins. Co.* v. *Fahrenkrug*, 68 Ill. 463; *Ætna Ins. Co.* v. *Maguire*, 51 Ill. 351; *Washington Fire Ins. Co.* v. *Davison*, 30 Md. 104; *Franklin Fire Ins. Co.* v. *Murray*, 73 Pa. St. 28; *Dayton Ins. Co.* v. *Kelly*, 24 Ohio St. 345-366.

When a policy of insurance is renewed or continued in force by a subsequent contract, it differs from a new contract of insurance, for by it the original contract is kept up, and in case of loss the original policy is the basis of the action, in connection with the contract of renewal or continuance. If changes in any of the terms, or any other change is intended to be made at the time of such renewal or continuance of a policy, it can be properly done without changing the wording of the original policy, by simply expressing the change agreed on in the renewal receipt. But the change should be expressed in the receipt, and the original policy with all its terms remains in force after such renewal or continuance, changed only in those respects which are stated in the receipt. For this receipt is not only a receipt, but is also a contract, while so far as it operates as a receipt, parol evidence may be introduced to vary it, but so far as it operates as a contract being in writing, it cannot be changed or modified by parol proof. *State, etc., Ins. Co.* v. *Porter*, 3 Grant's Cases (Pa.) 123; *Witherel* v. *Maine Ins. Co.*, 49 Me. 200, 203, 204; *Lacey* v. *Phenix F. Ins. Co.*, 56 Me. 562, 565; *New England Ins. Co.* v. *Wetmore*, 32 Ill. 221, 242, 243; *Driggs* v. *Albany Ins. Co.*, 10 Barb. (N. Y.) 440, 445.

Although such a renewal or continuance receipt, so far as it operates as a contract, cannot be explained or contradicted by any parol evidence yet, if it is on its face ambiguous, the meaning of the parties may be shown by proving the situation of the parties to the contract, the circumstances surrounding them when the renewal receipt was given, and their subsequent conduct in carrying into effect their written contract. For this kind of parol evidence, though not the verbal declarations of parties, can always be received to explain the

meaning of parties, whenever any written contract is ambiguous on its face. See *Crislip, Guardian,* v. *Cain,* 19 W. Va. syl. 12 and 13 pp. 440 and 441, and the numerous authorities cited to sustain this proposition on page 484. .

Generally a refusal by the company to pay, or a denial of its liability before any preliminary proofs are made, as required on the face of a policy, whereby the assured is induced not to comply with the conditions of the policy in that respect, is in law a waiver of the conditions of the policy requiring such proofs to be made.   Such a denial of responsibility is the same as a notice to the assured, that payment will not be made in any event, upon grounds other than a failure to comply by the assured with the conditions as to the proof of loss ; and it thus renders them wholly unnecessary, as the law does not require a person to perform an act, which the act of the other party has rendered unnecessary or a mere idle formality. *Norwich, &c., Trans. Co.* v. *Western Mass. Ins. Co.,* 34 Conn. 561; *Taylor* v. *Merchants' Ins. Co.,* 9 How. (U. S.) 390; *Post* v. *Ætna Ins. Co.,* 43 Barb. (N. Y.) 351; *Dean* v. *Ætna Life Ins. Co.,* 4 Thompson and Cook (N. Y.) 497.

We will now apply these principles to the case before us. It appears from the first bill of exceptions that the defendant asked the court to instruct the jury : "If from the evidence the jury find that the estate of Amos Sheppard prove to be solvent, and his debts have all been provided for by the sale of other assets, without the necessity of resorting to the alleged policy of insurance then, that the administrator of John A. Sheppard has no insurable interest in said property, and can not recover in this suit."   The court refused to give this instruction.   Did it err in so doing?   This instruction is very badly worded, but I understand that it propounds as law the proposition, that if an administrator insures real estate of his decedent then, he has no insurable interest if the estate both real and personal is solvent, whether the debts have been actually paid or not, provided, that by the sale of other real estate a fund has been raised, which will be sufficient to pay the debts of the decedent.

It is true, that notwithstanding our statute subjecting realty to the payment of debts of the decedent, the real estate of a decedent in no wise and for no purpose goes into the

possession or control of the administrator, but the legal title to the same descends directly to the legal heirs, subject of course to the just debts of the intestate, in so far at least, as the personalty falls short of paying the same. See *Sardley* v. *Kline's Adm'r*, 8 W. Va. syl. 3, p. 218. But our Code provides: "When the personal estate of a decedent is insufficient for the payment of his debts, his administrator may commence and prosecute a suit in equity, to subject his real estate to the payment of his debts." See Code of W. Va. ch. 86, § 7.

The administrator therefore, when the personal estate of the decedent in his hands is insufficient to pay his debts, is not a mere intermeddler when he insures the real estate; and such insurance is not a mere wager, as to whether the property insured will be burned in a specified time. It is therefore not clear, that an administrator would not under these circumstances at least, and on the principles we have laid down, have a right to insure a house which had belonged to his decedent for the benefit of creditors. That the creditors themselves of the decedent would under these circumstances have an insurable interest, seems clear. The law does not require, that the assured should have an estate or property in the subject of insurance. It is sufficient, that he have a direct pecuniary interest in its preservation. If the assured be liable to loss, if the property be destroyed by fire, he has always an insurable interest. Creditors having under the circumstances we have supposed, no other way of making their debts, and having a direct and certain right to subject the real estate to sale for their benefit, have an interest as positive and absolute as one having a specific lien, or even as the owner himself. It is not at all in the nature of expectation, such as a presumptive heir has in the estate of his ancestor. The creditors therefore would have a clear right to insure, but their recovery would have been limited to the amount of their debts.

With reference to the administrator, he would have a clear right to insure the personal property of the decedant in his hands; he would have the legal title to such property. But it is quite different with the land, which descends to the heirs. And if he had a right to insure the barn in this case,

it results from his power derived from the statute, to insti-
tute a suit and have it sold; the proceeds to be applied to the
payment of the debts of his intestate.   That it is highly con-
venient that he should possess this power, is obvious; as he
would know far better and sooner than creditors, when a
necessity to insure it arose from the insufficiency of the per-
sonal estate to pay the debts, and he could act more promptly
and efficiently than creditors scattered and incapable of act-
ing in concert.

Under our statute, an administrator has a certain connec-
tion with the real property.   That he has no estate in it is true,
but this we have seen, is not necessary to an insurable inter-
est.   He has no power to sell, but if the personal estate be
insufficient, he may apply to the court for an order to sell
the real estate.   It is material to the value of this power and
to the objects contemplated by our statute, that the real es-
tate should be protected from injury in the interim; and
until the proceedings can be perfected.   If the administrator
cannot insure the parties interested, the creditors will be
practically excluded from a remedy, which all other persons
having a similar interest possess.   There are many cases, as
we have seen, where an agent or trustee may insure the in-
terest of the party beneficially interested.   And I therefore
conclude, that at least, when the personal estate is insuffi-
cient to pay the debts, the administrator would have a right
to insure a building on the real estate of the decedent.   He
has under these circumstances, at least, an insurable interest.

This reasoning is deduced from the language of Chief Jus-
tice Denio, in *Herkimer* v. *Rice*, 27 N. Y. pp. 169 to 180, and
I have used his identical language, so far as it required no
modification to suit the case before us.   He adds on page 180:
" It is not necessary to decide to whom the surplus of the in-
surance money would have belonged, if the fund had exceeded
the amount of the debts.   The effect of the judgment in
*Wyman* v. *Wyman* would probably, be that such surplus be-
longed to the heirs as a substitute for the real estate, so far
as indemnity was not needed for the payment of the debts;
it was a trust for the heirs.   It is true the administrator was
not a representative of the heirs; but the company agreed to
insure a certain amount on the buildings, and after the loss

they voluntarily paid it. So far as it was not needed for the payment of debts it was a trust for some parties."

This decision in *Herkimer* v. *Rice,* 27 N. Y. 163, is sustained in *Phelps* v. *Gebhard,* 9 Bosw. 404, and *Clinton* v. *Hope Ins. Co.,* 45 N. Y. 454; and in *Beach* v. *Bowery Ins. Co.,* 8 Abb. Pr. (N. Y.) 261, which I have not been able to see, it is made a query, whether the administrator has not an insurable interest when the personalty is sufficient to pay all the debts. But as in this case, the record does not show, that any evidence was offered tending to prove, that the personal estate was sufficient to pay all the intestate's debts, this query need not be answered in this case.

If all the debts of the intestate had not been actually paid, when this suit was instituted by the administrator, on this policy, he would not be debarred from recovering because there were or might be real assets, of which the debts might be paid, any more than a judgment-creditor, who had insured the house of his debtor could be debarred from recovering on the policy, if the house was burned, if his debt remained unpaid; because there might still be real estate of his debtor, out of which he might make his debt. Having an insurable interest in the property, he would have a right to enforce the payment of the loss by fire, that it might be applied to the payment of his debt; and the insurance company has no right, legal or equitable, to require him to seek the payment of his debt elsewhere. If it had been actually paid, he could not recover on the policy, as he would have no continuing insurable interest. In the case supposed in this fourth instruction, set out in the first bill of exceptions, the court properly refused to say, that the plaintiff could not recover in this suit.

The circuit court committed no error in the modification of the instruction, set out in second bill of exceptions. The instruction asked was: "The court further instructs the jury, that if they believe from the evidence, that the plaintiff, John A. Sheppard, with fraudulent intent, altered the receipt for eleven dollars and twenty-five cents, produced in evidence, then they are to deny him all benefit from the said receipt as evidence of a contract, *or for any other purpose whatever.*" The court struck out the words, "or for any other purpose whatever," and then granted this instruction. As the record en-

tirely fails to show, in what manner this receipt was altered, whether in its date, the amount received or in the name of the company, in which the insurances on which this payment was made by John A. Sheppard, administrator of Amos Sheppard, it is impossible for us to say whether this altered receipt, if the alteration was made fraudulently, could not properly be used for some purpose, though it is clear, that it could not be used as evidence of the contract referred to in the declaration. As we do not know for what other purpose it could have been used, or even the form of this receipt as it was before its alteration, we cannot say, that the court erred in striking out these words, "or for any other purpose," from this instruction. It is incumbent on the exceptor to show affirmatively, that the circuit court erred to his prejudice, and this he has failed to do in this case, and has presented his objection to this action of the court in so obscure a manner as to render it impossible for us to say, that the court erred to his injury in striking out these words.

There was no error in the matter set out in the third bill of exceptions. I can see no difference in the instruction asked and the instruction given, though perhaps the instruction given by the court throughout was couched in language, which probably the jury would better understand.

The fourth bill of exceptions is, that the court refused to grant to the defendant this instruction: "That the receipt dated the 3d day of September, 1874, which is for ten dollars, and which has been exhibited to the jury, considered as a contract of insurance could not renew a policy, which had expired on the 15th of August, 1874." This instruction is based on the assumption, that the policy could not as a legal proposition be continued in force from September 3, 1874, to September 5, 1875, for the reason, that it had expired some two or three weeks before the date of this receipt. Or if it could be so continued by an express agreement in writing, it was not capable of being so continued by this receipt of September 5, 1874.

I am unable to see any reason, why the company could not by a proper agreement or receipt agree to continue in force upon the same terms and conditions and for the same amount the policy, which had ceased to exist on August 15

preceding, for another year from September 3, 1874. Such an agreement would operate precisely as it would have done had it been entered into on August 15, 1874, except only that the insurance would extend for one year from September 3, 1874, instead of for one year from August 15, 1874. I can imagine no reason, why parties competent to make such a contract could not do it in this form, as readily as a landlord might some time after the expiration of a lease agree with his tenant that he should occupy the leased premises for another year from the date of the agreement on the same terms on which he had occupied them for the previous year.

There is nothing in the insurance business, that requires any particular form to be used in making their contracts of insurance in order, that they may be binding. It may as well be done by a receipt or paper referring to a policy, which had expired as containing the terms of the agreement, as in any other form. But this instruction asks the court to declare, that it could not be done by the receipt for ten dollars, given September 3, 1874. Assuming for the present, that George E. Cordell, the agent of the defendant at Charlestown, had authority to make such contract, we will now consider, whether the court could have properly instructed the jury as a matter of law, that he could not do so when he executed this receipt on September 3, 1874. The receipt is as follows:

"$10.00.          Received of John A. Sheppard, administrator, ten dollars amount due on Peabody insurance policy, commenced September 3, 1874, till September 3, 1875.

"GEORGE E. CORDELL,

"*Agent Charlestown, W. Va.*"

There can be no question but that this paper is ambiguous in meaning. But when the court considered, that it was shewn in evidence as a continuation of a certain policy, filed with the declaration, and which had once before been continued in force for a year, after it had originally expired, and which policy and continuance were before it, they having been filed with the declaration, could it say, that this receipt was incapable of such an interpretation or, that it could not be interpreted as continuing this policy in force for one year from September 3, 1874, as it was asked to do by this instruction? It seems to me that it could not. As this re-

ceipt was ambiguous, the court in construing its meaning or the jury, if they acted upon it, would as we have seen, in order to ascertain its meaning, have had a right to look to the situation of the parties and the circumstances surrounding them, when this receipt was executed on September 3, 1874.

Looking then only at the written papers before the court, to ascertain this situation and circumstances, we find, that policy No. 3121 had been issued by the Peabody Insurance Company to John A. Sheppard, administrator of Amos Sheppard, on August 15, 1872; that the annual premium for the insurance for a year in this policy named was ten dollars, corresponding exactly with the amount of this receipt; that it was issued by the company named in this receipt; and that it was signed by the same agent of this company. On examining this policy we find, that the tenth section of it provided that "this insurance may be continued for such further time as shall be agreed on, provided the premium therefor is paid and endorsed on the policy, or a receipt given for the same." And we further find from a paper filed with the declaration at the end of the year this policy was renewed for another year by such a formal receipt for ten dollars; the time of its extension being for one year from August 15, 1873. This year expired on August 15, 1874, and in less than twenty days thereafter this receipt of September 3, 1874, was executed, corresponding in amount with the former receipt also signed by George E. Cordell, agent, and stating, that it was the amount due on Peabody insurance policy; referring it would seem to this policy. Now aided by these circumstances, to which we have a right to look, was it not the true meaning of this last receipt for ten dollars, that amount being the exact premium on this policy for a year, to continue it in force for another year as had been previously done; and do not the words "commenced 3d day of September, 1874, till September 3, 1875," mean, that the time of this extension and continuance of this policy commenced on the 3d day of September, 1874, and continued till September 3, 1875? It seems to me, that this ambiguous paper, when interpreted by the situation of the parties and the surrounding circumstances as it should be, meant exactly this and nothing more or less; and

therefore the court properly refused to instruct the jury, that this was not its meaning and that it could not so operate.

The court did not err in the matters set out in the fifth bill of exceptions  The instruction set out in it, which the court had already given the jury, was the same in substance, which the defendant asked should be again given to the jury, and the court properly refused to do so, as this repetition of an instruction in varying language could do no good, and might tend to confuse the jury.

There were four instructions given by the court to the jury, at the instance of the plaintiff, and they are set out in defendant's bill of exception No. 7.  The first of these instructions was in substance that: "If the jury find from the evidence, that the said receipt of ten dollars was given to renew the policy in the declaration mentioned, they will find for the plaintiff." It would have been better for the instruction to have said: "They will regard the said receipt as a continuing in force of the policy named in the declaration, from September 3, 1874, to September 3, 1875," instead of instructing them to find for the plaintiff, as the propriety of their so finding depended on other facts also.  But as this is stated in the other instructions given the plaintiff, I do not think this defect in this instruction was prejudicial to the defendant; it was otherwise correct, as appears from what we have already stated.  We have seen that, whatever changes the parties might agree upon may be inserted in the renewal receipt, and that the old policy remains in force subject only to such qualifications and changes as are made in the receipt on its renewal.

In *Driggs* v. *The Albany Insurance Company*, 10 Barb. 440, a policy had been repeatedly changed in its terms and conditions in the renewal receipts.  In the last renewal, it was changed from an insurance for one thousand eight hundred dollars on a grist mill and seven hundred dollars on machinery therein, by the renewal receipt, to two thousand five hundred dollars in general terms without making any distribution of the risk, and it was held, that the company was bound in this new form of obligation, though the effect of the change was to increase the responsibility of the company. This renewal receipt in this case, was signed only by the

agent of the company, and if such agent could thus change the contract by the renewal receipt, and increase the responsibility of the company, I can see no reason why the agent in the case before us, might not cause the continuance of the policy for one year to begin on the 3d day of September, 1874, instead of on August 15, 1874; especially as this change really did not in any degree increase the responsibility of the company.

The apparent authority of the agent to sign such a receipt, and make such a contract without the express assent of the company, by the signature of president and secretary to the receipt, it seems to me sufficiently appears from the fact, that the agent was the acting agent of the company in taking policies and in renewing them in Jefferson county; and especially from the tenth section of the policy which he had given the plaintiff and which declared, that "this insurance may be continued for such further time as shall be agreed on provided, the premium thereon is paid and endorsed on this policy or a receipt given for the same."

The plaintiff it seems to me, had a right to regard this agent as having authority not only to receive the premium, which he unquestionably had, but to give for it a receipt. This was his apparent authority, and this power as we have seen could not be restrained by the company by any private instructions given to the agent and not made known to the plaintiff. The second of the plaintiff's instructions states the law correctly according to the views, which have been before expressed.

The third instruction given at the instance of the plaintiff, bases the liability of the defendant upon his knowledge, that "the plaintiff was interested in the property insured only as administrator of Amos Sheppard;" and from this alone it assumes, that it is estopped from denying, that he had an insurable interest in the property. This is it seems to me a misapplication of this principle laid down in *Manhattan Fire Ins. Co.* v. *Well & Ulman*, 28 Gratt. 389, which is, "that a company should never be allowed to avoid liabilities on the ground, that facts of which the company have full knowledge at the time of assuming the policy, were not set out as requested by the formal words of the contract."

But unless we are prepared to say, that under all circumstances an administrator is authorized to insure against fire the real estate of his intestate, which we are not prepared to say at this time, it follows, that the knowledge of the company that the plaintiff was interested in the property only as administrator of Amos Sheppard, could not estop them from disputing, that as administrator he had any insurable interest in the property; as from what we have said this might depend upon, whether his personal estate was or was not sufficient to pay all his debts; and if it did depend on this, the company must have been ignorant of the facts on which might depend the question, whether the administrator had or had not an insurable interest in this property.

Still the defendant, on the facts now appearing in this record, would it seems not have been injured by the court's giving this third instruction asked for by the plaintiff. For as we have seen, the statement in the policy, that the barn insured was his, established the fact, that he had an insurable interest *prima facie*, and the record does not show, that any evidence was given, which *tended* to contradict this *prima facie* case. I suppose from the whole record, that there was probably no such evidence before the jury. But there may have been, as what evidence on this subject was before the jury appears very imperfectly in the record; not having access to the requisite books now to determine the question, whether an administrator can in all cases insure real property of his intestate, I decline at this time to express any opinion on this point. It seems probable from the record, that it will never be necessary to decide this point in this case, as I suppose it most probable, that the personal estate of Amos Sheppard was insufficient to pay his debts. If it should on the next trial be shown otherwise, this question will have to be decided. But we will leave it till it does arise, if it ever does. The fourth instruction of the plaintiff states the law correctly, according to the views we have already expressed.

We have thus far found no error committed by the circuit court, which we can say was probably prejudicial to the plaintiff in error. But there was another instruction given apparently by the court, of its own motion, contained in the sixth bill of exception of the defendant, which was it seems

to me erroneous, and which I can not say, as far as the record shows, was not prejudicial to the plaintiff in error. This instruction is: "If the jury shall believe from the evidence, that George E. Cordell was the general agent of the Peabody Insurance Company, and that the plaintiff applied to him for a continuance, reinstatement or renewal of the policy filed with the declaration, and that the said agent received the premium therefor, but afterwards delivered to the plaintiff a different policy in another company, whether such delivery was made by mistake or intentionally, then the defendant is bound by the act of its agent in receiving the said premium as the consideration of such renewal, as if one of its own policies had been delivered to the plaintiff by said agent."

This instruction is erroneous in several respects. It states, that the defendant is bound by the acts of its agent in receiving the premium for a renewal of the policy of the plaintiff, even though such agent gave no renewal receipt. Of course this means, that the defendant is bound in this suit to answer for this act of its general agent. Now this suit was brought on a renewal of the policy, and the policy itself in its tenth section provides that "this insurance may be continued for such further time as shall be agreed on, provided the premium therefor is paid *and endorsed on this policy or, a receipt given for the same.*" But by this instruction, the policy it is stated, may be renewed or continued by the simple paying of the premium. This can not be the case, unless we are to disregard absolutely the express words of the policy defining the manner, in which it is to be renewed or continued.

It is immaterial in this case, whether the receipt of this premium alone by the agent imposed any obligation on the defendant, as if it did impose an obligation, it was one which could not be enforced in this suit. The court in this instruction not only states, that the simple receipt of the premiums by the general agent of this company imposed on it an obligation, but in the close of the instruction undertakes to define this obligation. It states, that this obligation is the same, "as if one of its policies had been then delivered to the plaintiff by said agent of the company." I apprehend, that this is clearly a mistake. Whatever obligation if any, which the mere receipt of the premium by the defendant's

agent might impose on it, when he failed to renew the policy by giving any receipt or making any endorsement on the policy, such obligation could not be the same as if a new policy had been made out and delivered to the plaintiff; but even had it been, the court had in this case expressly instructed the jury, that the plaintiff would not in this suit recover on any new contract or policy. So, that this instruction was not only erroneous, but must be regarded as an instruction on a mere abstract question.

The court is not bound to give such an instruction, and if it does so under circumstances calculated to mislead the jury, such instruction will be error for which the judgment will be reversed. *Pasley* v. *English*, 10 Gratt. 236. But though abstract, if it be not calculated to mislead, the case will not be reversed on that account. *Hunter* v. *Jones*, 6 Rand. 541. Now it does seem to me, that this erroneous instruction was calculated to mislead the jury. The facts, which the evidence tended to prove are very imperfectly set out in this sixth bill of exceptions, or indeed in any or all of them. Yet we may fairly infer from them, that as a matter of fact there was a dispute between the parties when trying this case before the jury, as to whether the plaintiff after calling on the agent of the defendant to continue his policy for another year, and after paying him the year's premium, ten dollars, and taking for it an exceedingly imperfect receipt, which he claimed to be a renewal receipt, abandoned the idea of renewing his policy with the defendant, and concluded to take out a new policy in the Nail City Insurance Company, and as to whether or no he paid the additional charge for such new policy to the same person, as the agent of this Nail City Insurance Company, and took in lieu of a renewal of his policy with the defendant, a new policy in the Nail City Insurance Company. There appears in this record evidence which tends to prove, that this was done and also evidence tending to prove, that it was not done; as for instance the retention by the plaintiff of the receipt for ten dolllars, as the premium in the defendant's company.

If I could see clearly, that this important question in this case was fairly submitted to the jury, and that in deciding upon it they were uninfluenced by this erroneous instruc-

tion of the court, I should be unwilling to disturb the judgment, which has been rendered.  But I can not make up my mind, that this erroneous instruction of the court did not mislead the jury on this question of controversy.  It would it seems to me, be very naturally regarded as a broad instruction by the court, that if the agent of the defendant received the premium of ten dollars from the plaintiff, who paid it to renew his insurance, then that nothing afterwards done by the parties could prevent the defendant from being responsible on this renewal of the policy, which they had given.  If this instruction was so understood by the jury, it must have mislead them, for if the plaintiff afterwards received of Cordell a policy in the Nail City Insurance Company with the understanding, that it was received in lieu of the renewal or continuance of the policy of the plaintiff in the Peabody Insurance Company then, though Cordel neglected to take up this renewal receipt, the defendant could not be held responsible for the loss, which occurred.  But if the plaintiff never agreed or intended to give up his insurance with the defendant, nor to substitute for it an insurance in the Nail City Insurance Company, then his policy in the Peabody Insurance Company continued in force, though a policy in the Nail City Insurance Company had been handed to him by accident or otherwise.

The record in this case is as I have said very imperfect; and passing my judgment on it in the imperfect state, in which it is presented my conclusion is, that this erroneous instruction of the court was calculated to mislead the jury to the prejudice of the plaintiff in error, and therefore the judgment of the circuit court of Jefferson county rendered on November 15, 1879, must be set aside, reversed and annulled and the plaintiff in error must recover of the defendant in error, as administrator, his costs in this Court expended and that a new trial must be granted; the costs of the former trials to abide the result of this suit, and the cause must be remanded to the circuit court of Jefferson county to be proceeded with according to the principles laid down in this opinion.

JUDGES JOHNSON AND SNYDER CONCURRED.

JUDGMENT REVERSED.    CAUSE REMANDED.